**Nicholas James RUSSO, Petitioner,**

v.

**Gary L. JOHNSON, Director, Texas Department of Criminal Justice, Institutional Division, Respondent.**

No. Civ.A. H–99–4068.

United States District Court,
S.D. Texas.

Jan. 12, 2001.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Petitioner Nicholas James Russo ("Russo") challenges the denial of sentence credit for the time he was incarcerated in a New York State prison and the time he was on parole in New York after the issuance of a Texas parole violation warrant. Having reviewed the pending motion, the submissions of the parties, the state court record, and the applicable law, the court is of the opinion that Gary L. Johnson's ("Johnson") Motion for Summary Judgment (# 8) should be granted, Russo's Motion for Evidentiary Hearing (# 11) and Petition for Writ of Habeas Corpus (# 1) should be denied, and a Certificate of Appealability should not be issued.

I. *Factual Background and Procedural History*

On January 7, 1991, Russo pleaded guilty to felony theft and was sentenced to ten years' imprisonment in the Texas Department of Criminal Justice–Institutional Division ("TDCJ–ID"). *See State v. Russo*, No. 585291 (263rd Dist. Ct., Harris County, Jan. 7, 1991). He was released on parole on January 10, 1992. On March 4, 1992, a pre-revocation "blue" warrant was issued for Russo's arrest, alleging that he had violated Rules 1 and 3 of his parole by failing to report as directed to his parole officer and by changing his residence to an undisclosed location.

The warrant was posted on the Texas Crime Information Center ("TCIC") System on March 23, 1992. According to the deposition on written questions of Monte Dell McKee ("McKee"), a representative of the Criminal Justice Information Services Division of the Federal Bureau of Investigation, the warrant was never posted on the National Crime Information Center ("NCIC") System. McKee explained, "Entry of records into the NCIC Wanted Person File is on a voluntary basis. Furthermore, prior to April 27, 1998, the entry

Nicholas James Russo, c/o Steinman Blake Morgan, Houston, TX, petitioner pro se.

Carolyn Merchan, Office of Atty General, Austin, TX, for Gary Johnson, Director, TDCJ, respondent.

of a wanted person that would not be extradited from one state to another was prohibited." Regina Temple Grimes ("Grimes"), Assistant General Counsel with the Texas Department of Criminal Justice, confirmed in response to a deposition on written questions that "there was no entry, issuance, lodging or posting of official notice of the interest of the State of Texas in and authority to return Russo on any other law enforcement service other than TCIC."

On January 30, 1993, Russo was arrested in Bronx County, New York, for the offense of burglary. He was convicted of that offense on March 2, 1993, and was sentenced to two to four years' confinement in the New York Department of Correctional Services ("NYDOCS"). Russo was released on parole in New York on October 18, 1995. He was returned to the custody of the NYDOCS on April 30, 1996, due to a parole violation. Russo was again released on parole in New York on January 3, 1997. The State of Texas did not lodge a detainer or place a hold on Russo while he was in the custody of the State of New York. Russo has submitted a sworn statement from his mother, Audrey M. DeMicco, stating that she contacted the Texas Parole Office sometime during the month of March 1993 to inquire about her son's status and was told that "Texas would not be extraditing [her] son; he told [her] that Texas had no interest in Nicholas." She further related that Mr. Griffin, a New York State Parole Officer, who paid her a home visit, "assured [her] that there was no hold on Nicholas." In response to the deposition on written questions, Grimes confirmed that "there appears to have been contact from two individuals to TDCJ personnel questioning whether Russo was going to be extradited."

Russo returned to Texas shortly after his release on January 3, 1997, and the 1992 "blue" warrant was executed against him on January 14, 1997, in Humble, Texas. When he was interviewed by a representative of the TDCJ–Paroles Division on February 5, 1997, he admitted to the allegations contained in the parole violation warrant. Russo's Texas parole was revoked on March 13, 1997, and he was returned to the custody of the TDCJ–ID on April 22, 1997.

·Russo has filed two state habeas corpus applications challenging the denial of sentence credit. After the first application was remanded for an evidentiary hearing and/or affidavits, it was denied without written order on the findings of the trial court after a hearing. *See Ex parte Russo,* No. 36,642–01 (Tex.Crim.App. June 9, 1999). His second application was denied without written order. *See Ex parte Russo,* No. 36,642–02 (Tex.Crim.App. Aug. 18, 1999).

Russo filed his federal petition for a writ of habeas corpus on November 23, 1999.

## II. *Claims*

Russo's sole claim in support of his petition for federal habeas corpus relief is that he was wrongfully denied sentence credit for the time periods he was incarcerated and on parole in New York subsequent to the issuance of the Texas "blue" warrant on March 4, 1992. Relying on theories of intentional waiver of jurisdiction and equitable estoppel, Russo asserts that the failure to grant him sentence credit violates his rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

## III. *Analysis*

To prevail on his petition for federal habeas corpus relief, Russo must establish that he has been deprived of a right guaranteed by the United States Constitution. "A state prisoner seeking federal court review of his conviction pursuant to 28 U.S.C. § 2254 must assert a violation of a federal constitutional right." *Lawrence v. Lensing,* 42 F.3d 255, 258 (5th Cir.1994); *accord Narvaiz v. Johnson,* 134 F.3d 688, 695 (5th Cir.), *cert. denied,* 524 U.S. 947, 118 S.Ct. 2364, 141 L.Ed.2d 731 (1998); *West v. Johnson,* 92 F.3d 1385, 1404 (5th Cir.1996), *cert. denied,* 520 U.S. 1242, 117

S.Ct. 1847, 137 L.Ed.2d 1050 (1997); *Gray v. Lynn,* 6 F.3d 265, 268 (5th Cir.1993); *Lowery v. Collins,* 988 F.2d 1364, 1367 (5th Cir.1993). "Federal habeas relief cannot be had 'absent the allegation by a plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States.'" *Malchi v. Thaler,* 211 F.3d 953, 957 (5th Cir.2000) (quoting *Orellana v. Kyle,* 65 F.3d 29, 31 (5th Cir.1995), *cert. denied,* 516 U.S. 1059, 116 S.Ct. 736, 133 L.Ed.2d 686 (1996)); *accord Hilliard v. Board of Pardons & Paroles,* 759 F.2d 1190, 1192 (5th Cir.1985); *Irving v. Thigpen,* 732 F.2d 1215, 1216 (5th Cir.1984).

■ The federal habeas corpus statute addressing the claims of state prisoners provides:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a). Thus, when a federal court reviews a petition for a writ of habeas corpus from a state prisoner, its inquiry is restricted to "whether the petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Coleman v. Thompson,* 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (quoting 28 U.S.C. § 2254(a)). A federal writ of habeas corpus will not be granted to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Gibbs v. Johnson,* 154 F.3d 253, 257 (5th Cir.1998), *cert. denied,* 526 U.S. 1089, 119 S.Ct. 1501, 143 L.Ed.2d 654 (1999); *Pemberton v. Collins,* 991 F.2d 1218, 1223 (5th Cir.), *cert. denied,* 510 U.S. 1025, 114 S.Ct. 637, 126 L.Ed.2d 596 (1993); *Lavernia v. Lynaugh,* 845 F.2d 493, 496 (5th Cir.1988). "[S]tate-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000).

■ Generally, in the absence of a statute to the contrary, "there is no federal constitutional right to credit for time served prior to sentence." *Gremillion v. Henderson,* 425 F.2d 1293, 1294 (5th Cir. 1970); *see Boutwell v. Nagle,* 861 F.2d 1530, 1532 (11th Cir.1988); *Palmer v. Dugger,* 833 F.2d 253, 254 (11th Cir.1987); *Bayless v. Estelle,* 583 F.2d 730, 732 (5th Cir.1978), *cert. dismissed,* 441 U.S. 938, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979); *Paprskar v. Estelle,* 566 F.2d 1277, 1279 (5th Cir.), *cert. denied,* 439 U.S. 843, 99 S.Ct. 136, 58 L.Ed.2d 142 (1978); *Jackson v. Alabama,* 530 F.2d 1231, 1236–37 (5th Cir. 1976). Texas courts have recognized that "there is no constitutional right to credit for the time served between an arrest and the sentence" and also "no federal constitutional right to time credit for any period of confinement pending a parole revocation hearing." *Ex parte Canada,* 754 S.W.2d 660, 665–66 (Tex.Crim.App.1988) (citing *Jackson,* 530 F.2d at 1236–37; *Gremillion,* 425 F.2d at 1294); *see Morrison v. Johnson,* 106 F.3d 127, 129 n. 2 (5th Cir.1997); *Greenwood v. State,* 948 S.W.2d 542, 546 n. 4 (Tex.App.—Fort Worth 1997, no pet.). The principle enunciated in *Gremillion* was qualified to some extent by the Fifth Circuit in *Jackson:*

The rule in this circuit distilled from prior decisions, as to whether a state prisoner is entitled to federal habeas corpus relief for credit on the service of his sentence for time spent in custody or detention prior to trial or sentencing is: While there is no absolute constitutional right to pre-sentence detention credit as such, where a person is held for a bailable offense and is unable to make bail

due to indigency then if he is upon conviction sentenced to the statutory maximum imposable sentence for the offense he is entitled to credit for time spent in jail prior to sentencing.

530 F.2d at 1236–37; *see Bayless,* 583 F.2d at 732; *Paprskar,* 566 F.2d at 1279; *Martin v. Florida,* 533 F.2d 270, 271 (5th Cir. 1976); *Parker v. Estelle,* 498 F.2d 625, 627 (5th Cir.1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975). "The rationale of this rule is that to deny credit to indigent defendants in these circumstances would result in extending their sentences beyond the maximum prescribed for their offense, and in the imposition of a greater sentence than that determined by the state legislature as necessary to satisfy the states 'penological interests and policies.'" *Jackson,* 530 F.2d at 1237 (quoting *Williams v. Illinois,* 399 U.S. 235, 242, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970)). Where, as here, these circumstances do not exist, "pre-sentence credit is not an absolute constitutional right." *Jackson,* 530 F.2d at 1238 (rejecting Fifth, Eighth, and Fourteenth Amendment challenges to the denial of pre-trial sentence credit).

■ Thus, "[i]f absent a state statute, a prisoner has no right to credit for time served before he or she has been convicted, then without a statute the prisoner certainly has no right to credit for time spent in out-of-state custody" when, like Russo, he or she is an absconder from the State's criminal justice system. *Boutwell,* 861 F.2d at 1532. The federal courts have repeatedly rejected habeas corpus petitions filed by state prisoners attacking the denial of sentence credit for periods of confinement in other jurisdictions. *See, e.g., Aycox v. Lytle,* 196 F.3d 1174, 1180 (10th Cir.1999) (noting no fundamental unfairness under the Fifth or Fourteenth Amendments); *Beauchamp v. Murphy,* 37 F.3d 700, 702 (1st Cir.1994) (finding no fundamental unfairness in the constitutional sense); *Boutwell,* 861 F.2d at 1532 (rejecting due process and equal protection claims under the Fifth and Fourteenth Amendments). "To rule otherwise would allow the defendant to choose the State where he would serve a significant portion of his sentence." *Beauchamp,* 37 F.3d at 705; *see Boutwell,* 861 F.2d at 1532. The Fifth Circuit has similarly held that a federal prisoner is not entitled to credit toward his sentence for time spent serving a sentence imposed by another jurisdiction for an unrelated offense. *See United States v. Dovalina,* 711 F.2d 737, 740 (5th Cir.1983) (observing that there is no constitutional right to concurrent sentences); *Shaw v. Smith,* 680 F.2d 1104, 1106 (5th Cir.1982); *Causey v. Civiletti,* 621 F.2d 691, 694 (5th Cir.1980).

■ In Texas, an individual convicted of a criminal offense has a statutory right under state law to receive credit on his sentence for all time "spent in jail in said cause." *See* Tex.Code Crim.Proc.Ann. art. 42.03, § 2(a) (West 2000). The statute in effect on the date Russo's parole violation warrant was issued provided:

> In all criminal cases the judge of the court in which the defendant was convicted shall give the defendant credit on his sentence for the time that the defendant has spent in jail in said cause, from the time of his arrest and confinement until his sentence by the trial court.

Tex.Code Crim.Proc.Ann. art. 42.03, § 2(a) (West 1996). The statute in effect when Russo's parole was revoked was substantially the same:

> In all criminal cases the judge of the court in which the defendant was convicted shall give the defendant credit on his sentence for the time that the defendant has spent in jail in said cause, other than confinement served as a condition of community supervision, from the time of his arrest and confinement until his sentence by the trial court.

Tex.Code Crim.Proc.Ann. art. 42.03, § 2(a) (West 1991). In addition, by judicial precedent, a Texas parole violator is entitled to sentence credit for "any time spent in confinement pursuant to the execution of a pre-revocation warrant and that credit cannot be denied a parolee." *Ex parte Price,* 922 S.W.2d 957, 958–59 (Tex.Crim.

App.1996); *see Canada,* 754 S.W.2d at 668; *Greenwood,* 948 S.W.2d at 546 n. 4. Sentence credit does not accrue, however, until the "blue" warrant is executed:

> A prisoner for whose return a warrant has been issued shall, after the issuance of such warrant, be deemed a fugitive from justice and if it shall appear that he has violated the conditions or provisions of his mandatory supervision or parole, the time from the issuing of such warrant to the date of his arrest shall not be counted as any part of the time to be served under his sentence.

TEX.CODE CRIM.PROC.ANN. art. 42.18, § 13(b) (West 1991, 1996).

█ In order for a defendant to receive credit on a Texas sentence for time served in another jurisdiction, he must establish that a detainer or hold was lodged by the State of Texas with the other jurisdiction. *See Ex parte Bynum,* 772 S.W.2d 113, 114–15 (Tex.Crim.App.1989); *Nixon v. State,* 572 S.W.2d 699, 701 (Tex.Crim.App. 1978); *Fernandez v. State,* 775 S.W.2d 787, 789 (Tex.App.—San Antonio 1989, no writ); *Vega v. State,* 675 S.W.2d 551, 554 (Tex. App.—Houston [14th Dist.] 1984, no writ). When a Texas defendant is incarcerated in another jurisdiction, he is confined "in said cause" only if a detainer or hold is lodged against him in the other jurisdiction for the Texas offense. *See Ex parte Pizzalota,* 610 S.W.2d 486, 488 (Tex.Crim.App. 1980); *Bynum,* 772 S.W.2d at 114–15; *Nixon,* 572 S.W.2d at 702. Once a detainer has been lodged, the defendant is deemed to be in the "constructive custody" of the State of Texas although in the physical custody of another jurisdiction. *See Bynum,* 772 S.W.2d at 115; *Pizzalota,* 610 S.W.2d at 488; *Ex parte Jasper,* 538 S.W.2d 782, 784 (Tex.Crim.App.1976). No formal detainer is required, however, if it is established by some other means that the prisoner is detained on the Texas cause. *See Hannington v. State,* 832 S.W.2d 355, 356 (Tex.Crim.App.1992); *Ex parte Kuban,* 763 S.W.2d 426, 427 (Tex. Crim.App.1989).

"The rationale for allowing a time credit under a detainer is that the hold results in a 'change in the basis for (a prisoner's) confinement.'" *Bynum,* 772 S.W.2d at 115 (quoting *Ex parte Alvarez,* 519 S.W.2d 440, 443 (Tex.Crim.App.1975)). As explained in *Bynum,* the filing of a detainer or hold by another jurisdiction may have adverse effects on the prisoner:

> He may be denied opportunities open to other prisoners such as elevation to trusty status or a particular work station. The person's privileges may be curtailed. The individual's chance for early parole may also be disadvantaged, with a correlative concern regarding any rehabilitative process desired by the prison system.

*Id.* Hence, "[w]hen a detainer is lodged, fairness dictates that the spirit of Art. 42.03 be followed." *Id.* "In all such cases, it is not the fact that the individual is currently serving a term in a penal institution which determines whether credit should be given; rather, it is the fact that another jurisdiction has chosen to lodge a hold against the individual." *Id.*

█ In this instance, it is undisputed that no detainer or hold was lodged against Russo while he was in the custody of the State of New York. Hence, he did not experience the adverse effects of a detainer while imprisoned in New York and, in fact, was twice released on parole there. It is also uncontested that the "blue" warrant was not executed until Russo returned to Texas in January 1997. The State of Texas, however, was not constitutionally required to execute the warrant while Russo was in custody in New York. *See Moody v. Daggett,* 429 U.S. 78, 87, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). The Constitution does not mandate that a parole violation warrant be executed prior to the completion of a subsequent sentence, although such deferral may result in the denial of sentence credit. *See id.* at 84, 97 S.Ct. 274. Parole authorities are "free to defer a final decision on parole revocation until expiration of the subse-

quent sentence." *Id.* Moreover, Russo did not suffer any loss of liberty as a parole violator until he was taken in custody under the "blue" warrant. The Supreme Court has "established execution of the warrant and custody under that warrant as the operative event triggering any loss of liberty attendant upon parole revocation." *Moody,* 429 U.S. at 87, 97 S.Ct. 274 (citing *Morrissey v. Brewer,* 408 U.S. 471, 488, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). Here, there is no indication that the State of Texas was aware of Russo's whereabouts after he absconded on his parole. Merely because two individuals reportedly inquired of TDCJ personnel whether Russo was going to be extradited does not establish that officials were aware that he had fled to New York, much less that he was imprisoned there for committing another offense. In any event, Russo had no constitutional right to compel his own extradition or to require that a detainer be lodged against him. *See Aycox,* 196 F.3d at 1178. " 'The Constitutional dimension of extradition exists only when demand is made by one jurisdiction for the surrender of a person in another jurisdiction.' " *Id.* (quoting *Ortega v. City of Kansas City,* 875 F.2d 1497, 1499 (10th Cir.1989)).

■■■ Russo's reliance on the doctrine of waiver is unavailing under these circumstances. "[W]aiver is the 'intentional relinquishment or abandonment of a known right.' " *United States v. Reveles,* 190 F.3d 678, 683 (5th Cir.1999) (quoting *United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)); *accord Kona Tech. Corp. v. Southern Pac. Transp. Co.,* 225 F.3d 595, 608 (5th Cir. 2000); *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.,* 174 F.3d 653, 660 (5th Cir.1999). "[A] waiver must not only be voluntary but constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege." *Richardson v. Lucas,* 741 F.2d 753, 756 (5th Cir.1984) (citing *Estelle v. Smith,* 451 U.S. 454, 471 n. 16, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981)). A state presumptively waives jurisdiction over a defendant only where the state releases a prisoner before the expiration of his sentence and shows no interest in the return of the prisoner, either by agreement between the sovereigns, by detainer, or by any other affirmative action. *See Shields v. Beto,* 370 F.2d 1003, 1005–06 (5th Cir.1967). It is not sufficient, however, to prove conduct by state officials that merely evidences a lack of eager pursuit or even arguable lack of interest. *See Fabian v. Reed,* 714 F.2d 39, 41 (5th Cir.1983) (citing *Piper v. Estelle,* 485 F.2d 245, 246 (5th Cir.1973)). "[T]he waiving state's action must be so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' to require a legal sentence to be served in the aftermath of such action or inaction." *Piper,* 485 F.2d at 246.

That is not the case here. Shortly after Russo absconded on his parole, a "blue" warrant was issued for his arrest for failing to report as directed to his parole officer and for changing his residence to an undisclosed location. There is no evidence that the State of Texas was aware that Russo had departed the state and moved to New York or that he had committed a crime in New York and was incarcerated there. The parole violation warrant never alleged that he had committed a new violation of the law. Moreover, because the State of Texas would not have pursued extradition for what appeared to be merely a technical violation of parole, entry of the "blue" warrant in the NCIC System was not permitted at that time. Upon Russo's return to Texas in January 1997, however, he was apprehended within days on the parole violation warrant. While TDCJ personnel perhaps could have been more inquisitive when contacted regarding the State's interest in extradition, the State's action was not "so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' " to require Russo to complete his original ten-year sentence in Texas without credit for the time he was in custody in

New York. Under the totality of the circumstances, the State's conduct cannot be equated with voluntary relinquishment of jurisdiction over Russo, as required by the doctrine of waiver. *See Reveles,* 190 F.3d at 683; *Richardson,* 741 F.2d at 756; *Fabian,* 714 F.2d at 40–41; *Piper,* 485 F.2d at 247.

 Russo's reliance on the doctrine of equitable estoppel is similarly misplaced. Generally, equitable estoppel requires:

(1) a material misrepresentation or concealment

(2) made with actual or constructive knowledge of the true facts

(3) with the intent that the misrepresentation or concealment be acted upon

(4) by a third party without knowledge or means of knowledge of the true facts

(5) who detrimentally relies or acts on the misrepresentation or concealment.

*In re Christopher,* 28 F.3d 512, 520 (5th Cir.1994) (citing *Neiman–Marcus Group, Inc. v. Dworkin,* 919 F.2d 368, 371 n. 4 (5th Cir.1990)); *see Matador Petroleum Corp.,* 174 F.3d at 660; *Moosa v. INS,* 171 F.3d 994, 1003 (5th Cir.1999) (citing *United States v. Bloom,* 112 F.3d 200, 205 (5th Cir.1997)); *Gowland v. Aetna,* 143 F.3d 951, 954 n. 6 (5th Cir.1998); *Linkous v. United States,* 142 F.3d 271, 278 (5th Cir. 1998). It is well settled, however, that governmental entities "may not be estopped on the same terms as any other litigant." *Heckler v. Community Health Servs. of Crawford County, Inc.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984); *see Office of Personnel Management v. Richmond,* 496 U.S. 414, 419, 422, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) (recognizing that the Court has reversed every finding of estoppel against the government that it has taken the opportunity to review); *see also Gowland,* 143 F.3d; *Linkous,* 142 F.3d at 277–78; *Bloom,* 112 F.3d at 205; *United States v. Marine Shale Processors,* 81 F.3d 1329, 1349 (5th Cir.1996).

The Supreme Court has declined to rule that estoppel can never be applied against the government under any circumstances. *See Richmond,* 496 U.S. at 423, 110 S.Ct. 2465; *Heckler,* 467 U.S. at 60–61, 104 S.Ct. 2218. Instead, it has "mention[ed] the possibility ... that some type of 'affirmative misconduct' might give rise to estoppel against the Government." *Richmond,* 496 U.S. at 421–22, 110 S.Ct. 2465 (citing *Heckler,* 467 U.S. at 60, 104 S.Ct. 2218; *INS v. Miranda,* 459 U.S. 14, 19, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982); *Schweiker v. Hansen,* 450 U.S. 785, 788, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981); *INS v. Hibi,* 414 U.S. 5, 8, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973)); *see Montana v. Kennedy,* 366 U.S. 308, 314–15, 81 S.Ct. 1336, 6 L.Ed.2d 313 (1961); *Tefel v. Reno,* 180 F.3d 1286, 1302–03 (11th Cir.1999); *Fano v. O'Neill,* 806 F.2d 1262, 1265 (5th Cir.1987). Accordingly, all federal circuit courts of appeal require a showing of affirmative misconduct on the part of the government before the doctrine of estoppel may be invoked against a governmental entity. *See Tefel,* 180 F.3d at 1303 (citing *United States v. Javier Angueira,* 951 F.2d 12, 16 (1st Cir. 1991); *Drozd v. INS,* 155 F.3d 81, 90 (2d Cir.1998); *Fredericks v. Commissioner,* 126 F.3d 433, 438 (3d Cir.1997); *United States v. Agubata,* 60 F.3d 1081, 1083 (4th Cir.1995), *cert. denied,* 516 U.S. 1120, 116 S.Ct. 929, 133 L.Ed.2d 857 (1996); *Fano,* 806 F.2d at 1265; *United States v. Guy,* 978 F.2d 934, 937 (6th Cir.1992); *Edgewater Hosp., Inc. v. Bowen,* 857 F.2d 1123, 1138 (7th Cir.1988), *amended on other grounds,* 866 F.2d 228 (7th Cir.1989); *United States v. Schoenborn,* 860 F.2d 1448, 1451 (8th Cir.1988); *Watkins v. United States Army,* 875 F.2d 699, 707 (9th Cir.1989), *cert. denied,* 498 U.S. 957, 111 S.Ct. 384, 112 L.Ed.2d 395 (1990); *Penny v. Giuffrida,* 897 F.2d 1543, 1547 (10th Cir.1990); *LaRouche v. Federal Election Comm'n,* 28 F.3d 137, 142 (D.C.Cir.1994); *Henry v. United States,* 870 F.2d 634, 637 (Fed.Cir.1989)).

Thus, "courts have applied the elements of traditional equitable estoppel against

the government rather narrowly." *Marine Shale Processors*, 81 F.3d at 1349. The Fifth Circuit has noted that "to state a cause of action for estoppel against the government, a private party must allege more than mere negligence, delay, inaction, or failure to follow an internal agency guideline." *Fano*, 806 F.2d at 1265; *see Moosa*, 171 F.3d at 1003; *REW Enters., Inc. v. Premier Bank, N.A.*, 49 F.3d 163, 169–70 (5th Cir.1995). Rather, the party asserting estoppel must prove affirmative misconduct in addition to the traditional elements of estoppel. *See Moosa*, 171 F.3d at 1003; *Linkous*, 142 F.3d at 277; *Bloom*, 112 F.3d at 205; *Marine Shale Processors*, 81 F.3d at 1349; *REW Enters., Inc.*, 49 F.3d at 169. "Affirmative misconduct" requires an affirmative misrepresentation or affirmative concealment of a material fact by the government. *Moosa*, 171 F.3d at 1004 (quoting *Linkous*, 142 F.3d at 278).

In the case at bar, Russo has not demonstrated affirmative misconduct on the part of the State of Texas. He has not shown that the State made a misrepresentation or concealed a material fact regarding Russo, that it was aware of the relevant facts, or that it intended him to act upon any of its acts or omissions. *See Moosa*, 171 F.3d at 1004; *Linkous*, 142 F.3d at 278. Moreover, none of Russo's allegations, even if true, is comparable to the claims of "willfulness, wantonness, and recklessness" recognized by the Fifth Circuit in a rare finding that a plaintiff had supported a claim of affirmative misconduct on the part of the government. *See Fano*, 806 F.2d at 1266; *see also Mendoza–Solis v. INS*, 36 F.3d 12, 14 (5th Cir. 1994). In the absence of affirmative misconduct on the part of the State, the doctrine of equitable estoppel is inapplicable in this situation. *See Moosa*, 171 F.3d at 1004.

Moreover, in this context, the matter of sentence credit is a question of state law, as no viable constitutional issue has been raised. When considering Russo's state habeas application, the Texas courts rejected his contention that he was improperly denied sentence credit, reasoning that "[s]ince a detainer was not lodged against or a hold placed on [Russo] while he was held in the custody of NYDOCS, then [Russo] is not entitled to any time credits from this time period toward his sentence in the primary case." This court is required to accord due deference to the state courts' interpretation of state law. *See Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir.1995); *McKay v. Collins*, 12 F.3d 66, 69 (5th Cir.), *cert. denied*, 513 U.S. 854, 115 S.Ct. 157, 130 L.Ed.2d 95 (1994); *Reddix v. Thigpen*, 805 F.2d 506, 511 (5th Cir.1986); *Moreno v. Estelle*, 717 F.2d 171, 179 (5th Cir.1983), *cert. denied*, 466 U.S. 975, 104 S.Ct. 2353, 80 L.Ed.2d 826 (1984). " '[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.' " *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir.1997), *cert. denied*, 525 U.S. 969, 119 S.Ct. 418, 142 L.Ed.2d 339 (1998) (quoting *McGuire*, 502 U.S. at 67–68, 112 S.Ct. 475); *accord Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir.), *cert. denied*, 527 U.S. 1056, 120 S.Ct. 22, 144 L.Ed.2d 825 (1999). Hence, claims challenging a state court's application of state law are outside the scope of federal habeas review. *See Nobles v. Johnson*, 127 F.3d 409, 419 n. 21 (5th Cir.1997), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998); *Pemberton*, 991 F.2d at 1223. Because Russo has not demonstrated that the denial of sentence credit for the time he was in custody in New York constitutes a violation of the Constitution, his petition for federal habeas corpus relief must fail.

## IV. *Conclusion*

In summary, federal habeas corpus relief is not warranted under any theory advanced by Russo. The state courts reached the same conclusion, as reflected by the Texas Court of Criminal Appeals' denial of Russo's state applications for writs of habeas corpus without written order. A denial by the Texas Court of Criminal Appeals of a state habeas application

without written order is an adjudication on the merits where, as here, a procedural ground for denying the application does not appear in the state habeas record. *See Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 122, 148 L.Ed.2d 77 (2000); *Singleton v. Johnson,* 178 F.3d 381, 384 (5th Cir.1999); *Jackson v. Johnson,* 150 F.3d 520, 524 (5th Cir.1998), *cert. denied,* 526 U.S. 1041, 119 S.Ct. 1339, 143 L.Ed.2d 503 (1999); *Green v. Johnson,* 116 F.3d 1115, 1121 (5th Cir. 1997).

The federal habeas statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), precludes federal courts from granting habeas corpus relief to state prisoners with respect to any claim that was adjudicated on the merits in a state court proceeding, unless one of two express requirements is satisfied. The statute provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). While "[t]he message that Congress intended to convey by using the phrases, 'contrary to' and 'unreasonable application of' is not entirely clear," the Supreme Court is of the view that "the text is fairly read simply as a command that a federal court not issue the habeas writ unless the state court was wrong as a matter of law or unreasonable in its application of law in a given case."

*Williams,* 120 S.Ct. at 1508–09. The "AEDPA plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." *Id.* at 1509 (quoting H.R.Conf.Rep. No. 104–518, p. 111 (1996)). Thus, by enacting the AEDPA, "it seems clear that Congress intended federal judges to attend with the utmost care to state-court decisions, including all of the reasons supporting their decisions, before concluding that those proceedings were infected by constitutional error sufficiently serious to warrant the issuance of the writ." *Id.*

■■■ Under the circumstances presented here, this court is bound by the state courts' decisions, as they are neither contrary to nor involve an unreasonable application of clearly established federal law as determined by the Supreme Court, nor are they based on an unreasonable determination of the facts in light of the evidence presented. Therefore, the state courts' denial of habeas corpus relief to Russo must stand.

Accordingly, Johnson's motion for summary judgment is granted, and Russo's motion for evidentiary hearing and petition for writ of habeas corpus are denied. Russo has failed to present a claim upon which relief can be granted. There are no outstanding issues of material fact, and Johnson is entitled to judgment as a matter of law.

### V. *Certificate of Appealability*

■■■ Furthermore, Russo is not entitled to the issuance of a certificate of appealability. An appeal from a judgment denying federal habeas corpus relief may not proceed unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253; Fed.R.App.P. 22(b). The standard for granting a certificate of appealability, like that for granting a certificate of probable cause to appeal under prior law, requires the petitioner to make a substantial showing of the denial of a federal constitu-

tional right. *See Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 1603–04, 146 L.Ed.2d 542 (2000); *Miller*, 200 F.3d at 280; *Davis v. Johnson*, 158 F.3d 806, 809 (5th Cir.1998), *cert. denied*, 526 U.S. 1074, 119 S.Ct. 1474, 143 L.Ed.2d 558 (1999); *Whitehead v. Johnson*, 157 F.3d 384, 386 (5th Cir.1998); *Hallmark v. Johnson*, 118 F.3d 1073, 1077 (5th Cir.), *cert. denied*, 522 U.S. 1003, 118 S.Ct. 576, 139 L.Ed.2d 415 (1997); *see also Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). In making that substantial showing, the petitioner need not establish that he should prevail on the merits. Rather, he must demonstrate that the issues are subject to debate among jurists of reason, that a court could resolve the issues in a different manner, or that the questions presented are worthy of encouragement to proceed further. *See Slack*, 120 S.Ct. at 1603–04; *Barefoot*, 463 U.S. at 893 n. 4, 103 S.Ct. 3383; *Davis*, 158 F.3d at 809; *Hallmark*, 118 F.3d at 1076. Any doubt regarding whether to grant a certificate of appealability is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination. *See Miller*, 200 F.3d at 280–81 (citing *Fuller v. Johnson*, 114 F.3d 491, 495 (5th Cir.), *cert. denied*, 522 U.S. 963, 118 S.Ct. 399, 139 L.Ed.2d 312 (1997)).

Here, Russo has not shown that any of the issues raised by his claims are subject to debate among jurists of reason. Rather, the factual and legal questions advanced by Russo are not novel and have been consistently resolved adversely to his position. In addition, the questions presented are not worthy of encouragement to proceed further. Therefore, Russo has failed to make a sufficient showing to merit the issuance of a certificate of appealability. Accordingly, a certificate of appealability shall not be issued.