EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Alejandro del Villar Manzueta<br><br>Peticionario<br><br>v.<br><br>Administración de Corrección<br><br>Recurrida | 2017 TSPR 150<br><br>198 ____ |

Número del Caso: MO-2017-14

Fecha: 7 de agosto de 2017

Abogado del peticionario:

    Por derecho propio

Oficina del Procurador General:

    Lcdo. Luis Román Negrón
    Procurador General

Materia: Resolución del Tribunal con Voto particular disidente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Alejandro del Villar Manzueta

    Peticionario

      v.                     MO-2017-14

Administración de Corrección

    Recurrida

RESOLUCIÓN

San Juan, Puerto Rico, a 7 de agosto de 2017.

      Al escrito por derecho propio, no ha lugar.

      Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió un Voto particular disidente al cual se une el Juez Asociado señor Colón Pérez. El Juez Asociado señor Martínez Torres proveería no ha lugar por craso incumplimiento con el Reglamento de este Tribunal. La Jueza Asociada señora Pabón Charneco no intervino.

                         Juan Ernesto Dávila Rivera
                    Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Alejandro del Villar Manzueta

    Peticionario

       v.                   MO-2017-14

Administración de Corrección

    Recurrida

Voto particular disidente emitido por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ al cual se une el Juez Asociado SEÑOR COLÓN PÉREZ

San Juan, Puerto Rico, a 7 de agosto de 2017.

Nos encontramos ante la necesidad de pautar el derecho aplicable en una controversia relacionada con el crédito de sentencia por concepto de la privación de la libertad de un ciudadano en espera de ser extraditado. El estado de incertidumbre en nuestro ordenamiento es tal, que la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación, la Oficina del Procurador General y el peticionario por derecho propio plantean tres cómputos distintos.

Ante la patente realidad de que al no expedir el auto presentado ante nuestra

consideración se mantiene el estado de incertidumbre y se lesionan los derechos constitucionales del Sr. Alejandro del Villar Manzueta, disiento de la determinación que hoy toma una Mayoría de este Tribunal. Contrario a lo decidido, concluyo que la controversia presentada ameritaba la oportuna intervención de este Tribunal, toda vez que se trata de un asunto que nunca ha sido resuelto por este foro y tampoco ha sido atendido mediante legislación o reglamentación.

Examinemos el cuadro fáctico y procesal en que se suscitó la controversia de referencia.

**I**

Los hechos que dieron inicio a la controversia presentada ante este Tribunal ocurrieron el 17 de noviembre de 1997, cuando al Sr. Alejandro del Villar Manzueta (señor Del Villar o peticionario) se le impuso una pena de reclusión de veinte (20) años. Mientras extinguía esta pena, el peticionario se fugó fuera de la jurisdicción de Puerto Rico. Durante el tiempo en que el señor Del Villar estuvo fugado, fue sentenciado en España a cumplir una pena de seis (6) años de cárcel. Cumplida esta pena, el Gobierno de los Estados Unidos solicitó la extradición del peticionario al Gobierno de España, para poder procesarlo criminalmente

a nivel federal.[1] Autorizada la extradición, el 29 de octubre de 2008, el peticionario terminó de cumplir la pena que le fue impuesta en España y, en consecuencia, al día siguiente fue entregado al Gobierno de los Estados Unidos.

Así las cosas, después de que el peticionario se declarara culpable en la esfera federal, el **24 de septiembre de 2009**, la Corte de Distrito de los Estados Unidos para el Distrito Este de Nueva York emitió una sentencia de tiempo cumplido, condenando al peticionario a cumplir tres (3) años de libertad supervisada. Ante ello, el **17 de noviembre de 2009**, el peticionario fue entregado al Servicio de Inmigración y Control de Aduanas de los Estados Unidos. Ahora bien, en ese momento no se contaba con el permiso necesario de España para poder extraditar al señor Del Villar a Puerto Rico. No fue hasta el 12 de enero de 2010 que fue emitido por el Ministerio de Asuntos Exteriores y de Cooperación del Gobierno Español un documento titulado *Nota Verbal*, del cual se desprendía que se había autorizado la extradición del peticionario a Puerto Rico. Este documento fue entregado el 15 de enero de 2010 en la embajada de los Estados Unidos en

---

[1] El Gobierno de los Estados Unidos enmendó la solicitud de extradición presentada ante las autoridades de España, a los efectos de incluir la solicitud de extradición del Gobierno de Puerto Rico para que el Sr. Alejandro del Villar Manzueta (peticionario) terminara de extinguir la pena que se le había impuesto en Puerto Rico en el 1997.

Madrid. Finalmente, el **9 de febrero de 2010**, el peticionario fue extraditado a Puerto Rico.

A raíz de lo anterior, el 28 de abril de 2016, el señor Del Villar presentó una solicitud de remedio administrativo ante la División de Remedios Administrativos (División) del Departamento de Corrección y Rehabilitación (Departamento). En ésta, el peticionario solicitó que se le informara qué trámite se había realizado ante una supuesta petición previa suya, mediante la cual había solicitado que se le acreditara a su sentencia en Puerto Rico el tiempo que estuvo recluido en Nueva York en espera de ser extraditado a la Isla. En reacción a esta solicitud, la División determinó que no correspondía acreditar el tiempo solicitado. Ello pues, el tiempo por el cual reclamaba el peticionario respondía a otro delito, el cual no guardaba relación con los delitos por los cuales cumplía sentencia en Puerto Rico.

El señor Del Villar solicitó reconsideración de la determinación emitida por la División. En ésta, indicó que el tiempo que reclamaba correspondía al periodo en que estuvo recluido luego de cumplir la sentencia federal. No obstante, la solicitud de reconsideración fue denegada. Inconforme, el peticionario acudió ante el Tribunal de Apelaciones. Contando con el beneficio de la comparecencia de la Oficina del Procurador General (OPG), el foro apelativo intermedio modificó lo

resuelto por la División recurrida. Por tanto, ordenó que se bonificara a la sentencia impuesta al señor Del Villar el periodo comprendido entre el 12 de enero de 2010, fecha en que el Gobierno de España autorizó la extradición a Puerto Rico, y el 9 de febrero de 2010, fecha en que fue trasladado a Puerto Rico. Esta decisión reflejó la postura adoptada por la OPG. Nótese que, en su comparecencia ante el foro apelativo intermedio, la OPG reconoció que en Puerto Rico no existe legislación ni reglamento que disponga de una bonificación por el tiempo que una persona está detenida en espera de ser extraditada. En consecuencia, la recomendación brindada se fundamentó en la práctica prevaleciente en las extradiciones interestatales, si bien no se citó ley o caso alguno para sustentar esta postura.

En disconformidad con tal proceder, el peticionario recurrió ante este Tribunal. En esencia, señala que el Tribunal de Apelaciones incidió al no ordenar que se bonificara a su sentencia el término completo que estuvo recluido en el estado de Nueva York, en espera de ser extraditado a Puerto Rico. Esto, en violación a sus derechos constitucionales y a lo establecido en la Regla 182 de Procedimiento Criminal, 34 LPRA Ap. II, R. 182.

Así las cosas, una Mayoría de este Tribunal decidió proveer no ha lugar al recurso presentado por

el señor Del Villar. En consecuencia, y basado en los fundamentos que expondré a continuación, no me queda más que disentir del curso de acción seguido.

## II

### A.

Este Tribunal ha definido la extradición de la siguiente manera:

> La extradición es un proceso sumario mediante el cual un Estado (el "Estado asilo") le entrega a otro Estado (el "Estado reclamante") una persona que se encuentra en su jurisdicción y quien se alega ha cometido o ha sido convicto de algún delito en el Estado reclamante, con el propósito de que pueda ser sometido a las leyes penales de este Estado. Pueblo v. Martínez, 167 DPR 741, 750 (2006).

A nivel federal, la extradición surge de la Cláusula de Extradición, la cual se encuentra en el artículo cuatro de la Constitución federal. Art. IV, sec. 2, cl. 2, Const. EE. UU. Esta cláusula "no es autoejecutable, por lo que se requiere de legislación —tanto federal como estatal— para su implementación". Pueblo v. Martínez, supra, pág. 751. Véase, también, Roberts v. Reilly, 116 U.S. 80, 94 (1885). Cónsono con ello, en la esfera federal existe la *Extradition Act*, la cual, junto con los tratados aplicables, regula en los Estados Unidos la extradición tanto interestatal como internacional. Véase 18 U.S.C. sec. 3181 *et seq.*[2] Aunque no es de

---

[2]Nótese que la *Extradition Act*, 18 U.S.C. sec. 3181 *et seq.,* aplica a Puerto Rico, si bien no se ha establecido que la Cláusula de Extradición, Art. IV, sec. 2, cl. 2, Const. EE. UU., aplique también. Puerto

aplicación al caso de referencia, la *Extradition Act* dispone, para ciertas circunstancias, cuánto tiempo puede estar detenida una persona en espera de ser extraditada. Véase íd., 18 U.S.C. secs. 3183, 3187 y 3188.

Al no estar ocupado el campo de la extradición por la legislación federal, en Puerto Rico se aprobó la Ley uniforme de extradición criminal, Ley Núm. 4 de 24 de mayo de 1960, 34 LPRA sec. 1881 *et seq.* (Ley uniforme de extradición). "Esta ley . . . calca sustancialmente las disposiciones del *Uniform Extradition Act* de 1936, promulgado por la Conferencia Nacional de Comisionados sobre Leyes Uniformes Estatales . . .". Pueblo v. Martínez, supra, págs. 755-756. En ese sentido, "ordena que sus disposiciones sean interpretadas de manera compatible con lo provisto en otras jurisdicciones que hayan adoptado la ley uniforme, de suerte que se adelanten los propósitos que animan la ley y que persigue la Cláusula de Extradición". Íd., pág. 756. Véase, también, Ley uniforme de extradición, supra, 34 LPRA sec. 1881bb. Aunque útil en diversos extremos del proceso de extradición, referente a la concesión de una bonificación o crédito por el tiempo que una persona está detenida en espera de ser extraditada, la

Rico v. Branstad, 483 U.S. 219, 229-230 (1987). Véase, además, Pueblo v. Martínez, 167 DPR 741, 755 (2006).

Ley uniforme de extradición, <u>supra</u>, no dispone nada. Igual sucede con la *Extradition Act*, <u>supra</u>.

En el ámbito internacional, la extradición está delimitada por los tratados que adopten los países entre sí. Así, por ejemplo, las Naciones Unidas aprobó el Tratado modelo de extradición, A.G. Res. 45/116, N.U. Doc. A/RES/45/116 (14 de diciembre de 1990), con el propósito de promover el que los países establezcan acuerdos de extradición, mediante los cuales se respete la dignidad humana y se tomen en consideración los derechos reconocidos. En este tratado modelo se dispuso lo siguiente en cuanto a la entrega de la persona:

> 1. Una vez que se haya notificado la concesión de la extradición, las Partes se pondrán de acuerdo, **dentro de un plazo razonable,** para realizar la entrega de la persona reclamada y el Estado requerido informará al Estado requirente de la duración de la detención de la persona reclamada que vaya a ser entregada. <u>Íd.,</u> art. 11, cl. 1 (énfasis suplido).

De ocurrir que la persona no sea "trasladada fuera del territorio del Estado requerido dentro del plazo razonable que señale el Estado requerido . . ., el Estado requerido podrá ponerla en libertad y denegar su extradición por el mismo delito". <u>Íd.</u>, art. 11, cl. 2.

**B.**

En la Constitución de Puerto Rico, "[s]e reconoce como derecho fundamental del ser humano el derecho . .

. a la libertad . . .". Art. II, sec. 7, Const. PR. Asimismo, se dispone que "[n]inguna persona será privada de su libertad . . . sin [un] debido proceso de ley . . .". Íd. Igualmente, esta protección se encuentra en la Constitución de los Estados Unidos. Emdas. V y XIV, Const. EE. UU. "Una vez se identifica que la persona cumple con la exigencia de un interés libertario . . ., y que ese interés está amenazado por una intervención del Estado, procede determinar cuál es el procedimiento que se exige". Voto particular disidente del Juez Asociado señor Estrella Martínez en Pueblo v. Crespo Cumba, 193 DPR 900, 911 (2015). Véanse, además, Pueblo v. Villafañe Marcano, 183 DPR 50, 71 (2011); Pueblo v. Esquilín Maldonado, 152 DPR 257, 262 (2000) (Per Curiam). Entre otros extremos, el debido proceso de ley "prote[ge] a las personas del poder abusivo por parte del Estado . . .". Dora Nevares-Muñiz, Sumario de derecho procesal penal puertorriqueño 258 (10ma ed. 2014).

No queda duda de que "[l]a cobertura del debido proceso de ley es amplísima". Íd. Ante su amplia cobertura y aplicación, y en lo que concierne a "la zona procesal penal, . . . [ésta] cláusula permite la más variada gama de planteamientos y garantiza al acusado un procedimiento justo . . .". Ernesto L. Chiesa, Los derechos de los acusados y la factura más ancha, 65 Rev. Jur. UPR 83, 145 (1996). Esto aún ante

planteamientos y controversias noveles a los cuales no aplique ley o reglamento alguno. No debe olvidarse que "[e]sas garantías del debido proceso de ley permean todas las etapas del procedimiento penal, es decir, la etapa de investigación, procesamiento, sentencia y ejecución de ésta". Voto particular disidente del Juez Asociado señor Estrella Martínez en Pueblo v. Crespo Cumba, supra, pág. 911.

### C.

La Regla 182 de Procedimiento Criminal, supra, establece que "[e]l tiempo que hubiere permanecido privada de su libertad cualquier persona acusada de cometer cualquier delito público se descontará totalmente del término que deba cumplir dicha persona de ser sentenciada por los mismos hechos por los cuales hubiere sufrido dicha privación de libertad". Para que un convicto "tenga derecho a la bonificación establecida por . . . la Regla 182 de Procedimiento Criminal[,] hace falta que se le prive de su libertad, se le acuse y, posteriormente, se le ingrese para cumplir una sentencia por los mismos hechos por los que se le detuvo en primera instancia". Pueblo v. Contreras Severino, 185 DPR 646, 657 (2012).[3]

---

[3]En el caso de Pueblo v. Contreras Severino, 185 DPR 646 (2012), se suscitó una controversia muy similar a la del caso de referencia. Sin embargo, ésta no fue dilucidada, pues el Tribunal se limitó a determinar que la petición inicial tenía que hacerse ante la Administración de Corrección, y no ante el Tribunal de Primera Instancia.

**III**

Sin lugar a dudas, este caso nos brindaba la oportunidad de pautar la norma aplicable a situaciones como la de autos en que se solicita una bonificación por el tiempo que una persona permanece detenida hasta ser extraditada. Situación evidenciada, aún más, por las posturas distintas adoptadas por el Departamento y por la OPG.[4] Al igual que en el caso de <u>Pueblo v. Crespo Cumba</u>, supra, resultaba imperativo que pautáramos la norma aplicable a los hechos suscitados en el caso de epígrafe.

Ahora bien, comienzo por aclarar que la petición del señor Del Villar no puede fundamentarse en la Regla 182 de Procedimiento Criminal, <u>supra</u>. Esto pues, la citada regla aplica al tiempo que está detenido un acusado en espera de que termine el proceso instado en su contra. No obstante, el hecho de que no exista legislación o reglamentación aplicable no impide que se le pueda conceder un remedio adecuado, completo y oportuno al peticionario. Máxime, cuando el no hacerlo viola sus derechos constitucionales.

---

[4]No resulta convincente el argumento de la Oficina del Procurador General, respecto a que el no conceder el crédito es la práctica prevaleciente en las extradiciones interestatales. Esto en atención de que existen casos en los que sí se ha concedido el crédito a nivel interestatal. <u>Véanse, por ejemplo</u>, <u>Russo v. Johnson</u>, 129 F.Supp.2d 1012 (S.D. Tex. 2001) (donde se explicó que en Texas se concede crédito por reclusión en otra jurisdicción si Texas presenta un *detainer* o *hold* en la otra jurisdicción, llevando a que exista una custodia constructiva); <u>Childers v. Laws</u>, 558 F.Supp. 1284 (W.D.N.C. 1983).

Desde un punto de vista pragmático, el periodo de reclusión por el cual reclama el señor Del Villar se debió a la petición de extradición del Gobierno de Puerto Rico. De no haberse solicitado la extradición, el peticionario hubiera sido puesto en libertad al emitirse la sentencia federal mediante la cual se le impuso un término de libertad supervisada. Si bien durante ese periodo el peticionario no estuvo bajo la custodia de las autoridades de Puerto Rico, e inicialmente no podía ser extraditado pues no se contaba con el permiso necesario del Gobierno de España, **lo cierto es que el señor Del Villar estuvo privado de su libertad.** Al no concederse un crédito o bonificación por la totalidad del tiempo que estuvo recluido, se estaría extendiendo la pena que se le impuso, en clara violación a su derecho a un debido proceso de ley.[5] Igualmente, opino que el término que estuvo recluido en espera de ser extraditado fue uno irrazonable. Encuentro que situaciones como ésta, en las cuales se le priva a una persona de su libertad por un periodo de tiempo prolongado e irrazonable, son las que precisamente se tratan de evitar mediante la garantía constitucional del debido proceso de ley.

---

[5]Igualmente, al no concederse el crédito por la totalidad del tiempo que estuvo recluido el peticionario en espera de ser extraditado, se le estaría castigando dos veces por el mismo delito. Véase Childers v. Laws, supra, págs. 1286-1288.

Algunos podrían concluir que ese periodo correspondió a un castigo por fugarse, pero considero que esa interpretación no es correcta ni en Derecho ni en justicia. El castigo que procede en ley por fugarse sería que se le procese bajo el artículo 275 de nuestro Código Penal, 33 LPRA sec. 5368, el cual tipifica el delito de fuga. Por tanto, sostengo que castigar el delito de fuga negándole al señor Del Villar un crédito por la totalidad del tiempo que se le privó de su libertad mientras esperaba ser extraditado no constituye el remedio al que tiene derecho.

**IV**

En virtud de lo enunciado, disiento de la decisión tomada por una Mayoría de este Tribunal. En su lugar, hubiera expedido el auto presentado por el señor Del Villar y hubiera modificado la Sentencia recurrida, ordenando que se abonara a la sentencia que cumple el peticionario el periodo completo que estuvo recluido en espera de ser extraditado. Esto es, el periodo comprendido entre el 24 de septiembre de 2009 y el 9 de febrero de 2010.

Luis F. Estrella Martínez
Juez Asociado