EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Juan Martínez Cruz<br><br>Recurrido | Apelación<br><br>2006 TSPR 74<br><br>167 DPR ____ |

Número del Caso: AC-2005-70

Fecha: 5 de mayo de 2006

Tribunal de Apelaciones:

        Región Judicial de San Juan

Juez Ponente:


        Hon. García García

Oficina del Procurador General:

        Lcdo. Salvador J. Antonetti Stutts
        Procurador General

Abogada de la Parte Recurrida:

        Lcda. Eileen N. Díaz Ortiz

Colegio de Abogados de Puerto Rico:

        Lcdo. Edgardo M. Román Espada

        Lcdo. Julio Fontanet Maldonado
        Presidente del Colegio de Abogados

Unión Americana de Libertades Civiles:

        Lcdo. William Ramírez Hernández


Materia: Extradición


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.

                                AC-2005-070

Juan Martínez Cruz

    Recurrido

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 5 de mayo de 2006

Nos corresponde resolver en esta ocasión si la Ley Uniforme de Extradición Criminal, Ley Núm. 4 de 24 de mayo de 1960, 34 L.P.R.A. sec. 1881 *et seq.*, le impone al Gobernador del Estado Libre Asociado de Puerto Rico el deber ministerial de acceder a una solicitud de extradición hecha por el Gobernador del estado de Pennsylvania, cuando la petición remitida cumple con todos los requisitos formales exigidos por la legislación aplicable.

**I**

El 3 de junio de 2002, el Gobernador del Estado de Pennsylvania le requirió a la Gobernadora del Estado Libre Asociado de Puerto Rico

la extradición del recurrido, Juan Martínez Cruz ("Martínez Cruz" o "el recurrido"); contra quien pesaba una orden de arresto emitida por un tribunal del estado de Pennsylvania por varios delitos graves cometidos en dicho estado y quien, alegadamente, había huido de esa jurisdicción y se encontraba fugitivo en Puerto Rico.  Se alegó que el señor Martínez Cruz era buscado para que enfrentara juicio por los delitos de asesinato así como otros delitos graves.

El 17 de junio de 2002 se accedió al requerimiento de extradición, iniciándose de esa forma el procedimiento judicial establecido en la Ley Uniforme de Extradición Criminal, ("Ley Uniforme de Extradición"), Ley Núm. 4 de 24 de mayo de 1960, 34 L.P.R.A. sec. 1881 *et seq.*, y su contraparte federal.  18 U.S.C. sec. 3182.  A esos efectos, el Departamento de Justicia presentó ante el Tribunal de Primera Instancia la correspondiente demanda de extradición.  El acusado anunció que no accedería a ser extraditado ante la posibilidad de que pudiera enfrentar la pena de muerte en Pennsylvania de ser hallado culpable de los delitos por los que se le procesaría.  Oportunamente, presentó un recurso de *habeas corpus* ante el foro de instancia.

El 26 de septiembre de 2003 el foro de instancia celebró la vista para considerar la solicitud de extradición y el recurso de *habeas corpus* presentado.  En ésta, además del recurrido y el Ministerio Público, participó como amigo de la corte el Colegio de Abogados. Martínez Cruz se opuso a su traslado, como ya indicamos,

bajo el fundamento que el delito por el cual se le acusaba en Pennsylvania era uno que podía acarrear la pena de muerte y, toda vez que dicho castigo estaba prohibido por la Constitución del Estado Libre Asociado de Puerto Rico, su traslado a Pennsylvania sería en violación de la Constitución de Puerto Rico. El señor Martínez Cruz no impugnó o cuestionó la corrección de los documentos de extradición, ni cuestionó que él fuera la persona buscada, o que fuera un prófugo o que, en efecto, hubiera sido acusado de delito en Pennsylvania según se alegó en la documentación sometida ante el tribunal.

El Ministerio Público, por su parte, arguyó que éste no era un caso que versara sobre la pena de muerte y la Constitución de Puerto Rico, sino más bien un caso que se regía por la Cláusula de Extradición de la Constitución de los Estados Unidos, Art. VII, sec. 2 y lo dispuesto en *Puerto Rico v. Branstad*, 483 U.S. 219 (1987). Concluida la vista, el caso quedó sometido ante el Tribunal de Primera Instancia.

Un año más tarde, el foro primario emitió una resolución en la cual determinó lo siguiente: Primero, que la cláusula de extradición de la Constitución de los Estados Unidos no aplica a Puerto Rico. Segundo, que la legislación federal de extradición "no establece pautas en torno a la controversia del caso de autos" dejando a los estados la autoridad para que legislen sobre esta materia. Tercero, que la Ley Uniforme de Extradición debe interpretarse acorde al mandato de la Constitución del

Estado Libre Asociado de Puerto Rico que prohíbe la pena de muerte. Finalmente, concluyó que la extradición de Martínez Cruz solo podía llevarse a cabo en la medida que existieran garantías de que Pennsylvania no solicitaría la pena de muerte para él, de éste ser hallado culpable. En ausencia de tales garantías se prohibió la extradición de Martínez Cruz.[1] En específico indicó dicho foro:

> Por todos los argumentos anteriores se declara que si no hay garantías del estado peticionario de que no pediría la pena de muerte en este caso no se podrá trasladar al señor Martínez hacia el Estado de Pennsylvania, ya que esto iría en clara violación de la Constitución del Estado Libre Asociado de Puerto Rico. De no ofrecerse esa garantía, se declara ha lugar el recurso presentado por la defensa.

Inconforme, el Procurador General recurrió ante el Tribunal de Apelaciones. El foro apelativo intermedio celebró una vista oral en el caso y el pasado 17 de octubre

---

[1] El recurrido ha planteado, tanto ante el Tribunal de Apelaciones como en su alegato ante nosotros, que la determinación del foro primario y luego la del foro apelativo intermedio, no fue la de prohibir la extradición de Martínez Cruz. Indica, que lo que hizo el tribunal fue imponer una condición a la extradición para "atemperar el procedimiento de extradición de marras a la Constitución del Estado Libre Asociado de Puerto Rico para que se le pudiera dar curso a la rendición del recurrido conforme a derecho." Alegato de la parte recurrida, pág. 9.

La interpretación del recurrido, aunque ingeniosa, no la compartimos. Los foros inferiores en efecto prohibieron la extradición de Martínez Cruz a menos que Pennsylvania, que no es parte en este procedimiento, se comprometiera a no solicitar la pena de muerte de éste ser hallado culpable en el proceso penal que pende ante los tribunales de ese estado.

Independientemente de lo anterior, el resultado de este caso no varía si de lo que se trata es de una prohibición expresa o de una prohibición tácita, o la imposición de una condición.

de 2005 dictó la sentencia cuya revisión se ha solicitado. En la misma, dicho foro confirmó la determinación del foro primario bajo iguales fundamentos.

Insatisfecho, el Procurador General presentó una petición de certiorari ante este Tribunal el 10 de noviembre de 2005 y posteriormente el recurrido presentó su alegato.[2] El Procurador General señaló la comisión de los siguientes errores:

> Erró el Tribunal de Apelaciones al resolver que autorizar la extradición del recurrido sin la condición de que en caso de ser hallado culpable no se imponga la pena de muerte, está reñido con la sección 7 de la Carta de Derechos, Artículo II de la Constitución de Puerto Rico, que prohíbe la pena de muerte.

> Erró el Tribunal de Apelaciones al ignorar el derecho positivo claramente aplicable al caso y resolver a base de consideraciones de derecho internacional claramente inaplicables y de consideraciones morales en torno a la pena de muerte.

Poco después, el Colegio de Abogados así como la "American Civil Liberties Union" ("ACLU" por sus siglas en inglés) solicitaron comparecer como amigos de la corte ante este Tribunal. Accedimos a las solicitudes presentadas y le concedimos un término a ambas partes para que presentaran sus correspondientes escritos.

El caso quedó finalmente sometido ante nuestra consideración el pasado 8 de febrero de 2006. Contando entonces con la comparecencia de las partes antes

---

[2] Tanto el Procurador General, a nombre del Pueblo de Puerto Rico, como la División de Apelaciones de la Sociedad para la Asistencia Legal en representación de Martínez Cruz, presentaron excelentes alegatos discutiendo ampliamente los asuntos planteados en el recurso, desde sus respectivas posiciones antagónicas.

mencionadas, pasamos a resolver la controversia ante nuestra consideración.

II

La amplia discusión pública generada en torno a este caso exige unos señalamientos introductorios que permitan aclarar la controversia real que pende ante nuestra consideración.

A poco que separemos el grano de la paja, advertimos que lo que se encuentra ante nuestra consideración es una controversia sobre los deberes y obligaciones del Gobernador del Estado Libre Asociado bajo la Ley Uniforme de Extradición y su contraparte federal, una vez recibe del gobernador de un estado de los Estados Unidos, una petición para extraditar a una persona que se alega ha cometido algún delito en dicho estado y ha huido a Puerto Rico.

En estricto rigor, por lo tanto, éste no es un caso sobre la pena de muerte y la prohibición constitucional para su imposición en Puerto Rico, o sobre la vitalidad de la Constitución del Estado Libre Asociado de Puerto Rico. Lamentablemente, la exposición pública que ha prevalecido hasta este momento ha ofuscado la controversia que hoy debemos atender.

Veamos entonces.

III

**A. La Cláusula de Extradición de la Constitución de los Estados Unidos y la legislación federal aprobada para su implementación.**

La extradición es un proceso sumario mediante el cual un estado (el "estado asilo") le entrega a otro estado (el

"estado reclamante") una persona que se encuentra en su jurisdicción y quien se alega ha cometido o ha sido convicto de algún delito en el estado reclamante, con el propósito de que pueda ser sometido a las leyes penales de este estado. S. Spear, *The Law of Extradition*, Weed, Parsons & Co., Albany, 1885, 3ra. ed. pág. 70 ("The surrender by one sovereign state to another, on its demand, of persons charged with the commission of crimes within its jurisdiction, that they may be dealt with according to its laws.")

El proceso de extradición interestatal tiene sus orígenes en la época de las colonias norteamericanas, cuando por consideraciones de respeto mutuo y cortesía ("comity") entre las colonias, éstas suscribieron entre sí acuerdos de esta naturaleza. Spear, *op. cit,* págs. 283-286. Posteriormente, el Art. IV de los Artículos de Confederación reconoció la importancia del procedimiento al proveer en su texto para la extradición a la colonia reclamante de personas acusadas de crímenes que hubieren huido a otra colonia para evitar el procedimiento criminal. *Loc. cit*. Al promulgarse la Constitución de los Estados Unidos se incorporó a dicho documento en su Art. IV, sec. 2, cl. 2,[3] sustancialmente, la misma disposición que existía

---

[3] El Art. IV, Sec. 2, cl. 2, de la Constitución de los Estados Unidos dispone en lo siguiente:

> A person charged in any state with Treason, Felony or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up. To be

ya en los Artículos de Confederación respecto la
extradición. Véase, Kopelman, Extradition and Rendition,
History-Law-Recommnedations, 14 *B. U. L. Rev.* 591, 628-629
n.7 (1934).

La Cláusula de Extradición de la Constitución de los
Estados Unidos no es autoejecutable, por lo que se requiere
de legislación --tanto federal como estatal-- para su
implementación.[4]  A esos fines, se aprobó la Ley de
Extradición de 1793. Spear, *op. cit.*, págs. 295-299. Este
estatuto, con modificaciones menores, ha permanecido
vigente al día de hoy.  La ley federal dispone:

> Whenever the executive authority of any State or
> Territory demands any person as a fugitive from
> justice, of the executive authority of any State,
> District, or Territory to which such person has
> fled, and produces a copy of an indictment found
> or an affidavit made before a magistrate of any
> State or Territory, charging the person demanded
> with having committed treason, felony, or other,
> crime, certified as authentic by the governor or
> chief magistrate of the State or Territory from
> whence the person so charged has fled, the
> executive authority of the State, District, or
> Territory to which such person has fled shall
> cause him to be arrested and secured, and notify
> the executive authority making such demand, or

_____
removed to the state having jurisdiction of the
crime.

[4] Sobre este particular se ha indicado lo siguiente: "The
Extradition Clause is generally implemented by State laws,
making it the duty of the governor to deliver the fugitive
to the demanding State.  Even though it has been said that
the extradition process is one of comity, **the Extradition
Clause articulates, in mandatory language, the concepts of
full faith and credit needed to foster national unity and
facilitates the smooth functioning of the criminal justice
system.  Thus, extradition of fugitives from one State to
another is not dependent of 'mere' comity or on contract."**
(Énfasis nuestro.) North, The Obstruction of the
Extradition Derailment, 28 *So. U. L. Rev.* 151, 155 (2001).
Véase además, Loeffler, In re Hinnant: The Relevance of
Competence in Interstate Extradition Proceedings, 25 *New
Eng. J. on Crim. & Civ. Confinement* 469 (1999).

the agent of such authority appointed to receive
the fugitive, and shall cause the fugitive to be
delivered to such agent when he shall appear,  If
no such agent appears within thirty days from the
time of the arrest, the prisoner may be
discharged.

18 U.S.C. sec. 3182.[5]  La legislación federal no ocupa el campo en esta materia por lo que los estados, territorios y el Estado Libre Asociado de Puerto Rico pueden establecer mediante legislación su propio procedimiento, como en efecto han hecho.

Aun cuando los estados, territorios y el Estado Libre Asociado pueden así legislar, lo cierto es que el proceso legislado no puede ser uno más oneroso al contemplado en la legislación federal o a lo dispuesto en la Constitución de los Estados Unidos.  Véase, Abramson, Extradition in America:  Of Uniform Acts and Governmental Discretion, *33 Baylor L. Rev.* 793 (1981) ("States are free to effect extradition under less stringent requirements, but are not permitted to make extradition any more difficult.")

El propósito que persigue esta cláusula, así como la legislación aprobada para su implementación, es dual: por un lado, se pretende evitar que un estado se convierta en un santuario para los criminales que pretenden burlar las leyes penales de una jurisdicción huyendo al estado asilo; y, por otro, procura evitar la balcanización de la administración del sistema de justicia penal entre las jurisdicciones que coexisten en los Estados Unidos.

---

[5] Se advierte de inmediato la similitud entre este lenguaje, el dispuesto en la Cláusula de Extradición de la Constitución de los Estados Unidos con el utilizado en la Ley de Extradición Criminal. Véase discusión, *infra*.

*California v. Superior Court of California, ante*, pág. 406 ("The obvious objective of the Extradition Clause is that no State should become a safe haven for the fugitives from a sister State's criminal justice system."); *Michigan v. Doran,* 439 U.S. 282, 287 (1978). Véase además, Karkosat, Fleeing Injustice: Examining the Interstate Extradition Clause as Applied to Political Refugees, *68 U. Cinn. L. Rev.* 123 (1999) ("The dual purpose of the Extradition Clause is to preclude any state from becoming a heaven for fugitives from another state and to prevent any division of the criminal justices system among the states.")

Para efectuar ese propósito, la ley federal y las leyes aprobadas por los estados, territorios y el Estado Libre Asociado tienen que interpretarse de una manera expansiva y no restrictiva y de forma consistente entre sí para adelantar sus objetivos. En *Biddinger v. Commissioner of Police,* 245 U.S. 128, 132-133 (1917) se indicó correctamente:

> "Such being the origin and purpose of these provisions of the Constitution and statutes, **they have not been construed narrowly and technically by the courts as if they were penal laws, but liberally to effect their important purpose.**"
> (Énfasis nuestro.)

En igual sentido, *Appleyard v. Commonwealth of Massachusetts*, 203 U.S. 222, 228 (1906).

El Tribunal Supremo de los Estados Unidos interpretó por primera vez la Cláusula de Extradición en *Kentucky v. Dennison*, 65 U.S.(24 How.)66 (1861). Allí se resolvió, primero, que la cláusula imponía una obligación de carácter

mandatario sobre el gobernante del estado asilo de remitir al estado reclamante el prófugo cuya extradición se solicitaba.[6]   Segundo, que bajo la ley federal de extradición el recurso extraordinario de *mandamus* no estaba disponible a los tribunales federales para obligar a los funcionarios ejecutivos del estado asilo a cumplir con su obligación de extraditar.[7]

---

[6] El Tribunal Supremo indicó, en *Kentucky v. Dennison*, 65 U.S.(24 How.)66, 105 (1861), lo siguiente, y citamos *in extenso:*

> Looking, therefore, to the words of the Constitution --to the obvious policy and necessity of this provision to preserve harmony between States, and order and law within their respective border . . the conclusion is irresistible, that this compact engrafted in the Constitution include, and was intended to include, every offence made punishable by the law of the State in which it was committed, and that it gives the right to the Executive authority of the State to demand the fugitive from the Executive authority of the State in which he is found; that the right given to 'demand' implies that it is an absolute right; **and it follows that there must be a correlative obligation to deliver, without any reference to the character of the crime charged, or to the policy or laws of the State to which the fugitive has fled."**
> (Énfasis nuestro.)

[7] El Tribunal Supremo en *Kentucky v. Dennison*, *ante*, señaló lo siguiente:

> **The act does not provide any means to compel the execution of this duty, nor inflict any punishment for neglect or refusal on the part of the executive of the State;** nor is there any clause or provision in the Constitution which arms the Government of the United States with this power.  Indeed, such a power would place every State under the control and dominion of the General Government, even in the administration of its internal concerns and reserved rights.  And we think it clear, that the Federal Government, under the Constitution, has no power to impose on a State officer, as such, any duty whatever, and compel him to perform it.  (Énfasis nuestro.)

Por más de un siglo, éste fue el estado de derecho prevaleciente en los Estados Unidos. Ello, hasta que el estado de Iowa rehusó entregar a las autoridades del Estado Libre Asociado de Puerto Rico a Ronald Calder, un empleado del "Federal Aviation Administration" en San Juan, para que enfrentara cargos criminales por asesinato y tentativa de asesinato. Calder había arrollado a un matrimonio luego de un altercado entre él y el esposo de la víctima. Se adujo que Calder arrolló al matrimonio, hiriendo gravemente al esposo y provocando la muerte de su esposa, quien se encontraba en estado grávido. El incidente fue particularmente estremecedor pues, como se alegó, Calder utilizó su automóvil para pasar sobre el cuerpo de la difunta en varias ocasiones. Calder fue acusado en Puerto Rico y antes de celebrarse la vista preliminar huyó a Iowa.

Calder se opuso a su extradición alegando que un "hombre blanco" en Puerto Rico no podría recibir un juicio justo e imparcial ("a white American man . . . could not receive a fair trial in the Commonwealth of Puerto Rico.") *Puerto Rico v. Branstad*, *ante*, pág. 222. Adujo que el sistema judicial en Puerto Rico era corrupto y que los testigos en su contra "habían sido sobornados." Véase, *Puerto Rico v. Branstad*, *ante*, Ap. pág. 47a, citado en *Puerto Rico v. Branstad*: The End of Gubernatorial Discretion in Extradition Proceedings, 19 *Toledo L. Rev.* 649, 660 (1988). Véase además, *Puerto Rico v. Branstad* Resotration of Integrity for the Cosnitution´s Extradition Clause, 19 *Cumb. L. Rev.* 109 (1989). El Gobernador de Iowa

rehusó extraditar a Calder a Puerto Rico. Eventualmente el caso llegó al Tribunal Supremo de los Estados Unidos donde se solicitó la revocación de *Kentucky v. Dennison, ante,* para que el tribunal federal en Iowa pudiera forzar, a través del recurso extraordinario de *mandamus,* la entrega de Calder a las autoridades de Puerto Rico.

Acogiendo los argumentos esbozados por el gobierno del Estado Libre Asociado, el Tribunal Supremo en *Branstad,* revocó aquella determinación de *Dennison* que impedía que el gobierno federal compeliera al gobernador de un estado, mediante *mandamus*, a rendir a las autoridades del estado reclamante un fugitivo de la justicia que había buscado refugio en el estado asilo. Por otro lado, el Tribunal dejó intacta la norma general de *Dennison* de que las obligaciones impuestas por la ley federal de extradición son ministeriales. Se indicó: "We reaffirm the conclusion that the commands of the Extradition Clause **are mandatory, and afford no discretion to the executive officers or courts of the asylum State**." (Énfasis nuestro.) *Branstad, ante*, pág. 227.

En *Branstad*, el Tribunal rehusó resolver si la Cláusula de Extradición aplicaba a Puerto Rico. El Tribunal resolvió, sin embargo, que la ley federal de extradición sí aplicaba a Puerto Rico. *Branstad, ante,* pág. 229 ("We need not decide today what applicability the Extradition Clause may have to the Commonwealth of Puerto Rico, however, for the Extradition Act clearly applies.") Lo cierto es que, independientemente de si aplica o no la

Cláusula de Extradición al Estado Libre Asociado, el Tribunal en *Branstad* hace referencia indistintamente a la Cláusula de Extradición como a la ley federal para llegar a su resultado. Ello, después de todo, no sorprende, pues la segunda lo que pretende hacer es impartirle eficacia a la primera; su entretejido es evidente.

De *Branstad* debemos colegir, en lo que respecta a la controversia ante nuestra consideración, primero, que el gobernante del estado asilo no tiene discreción --cumplidos los requisitos procesales de la petición de extradición-- para rendir ante los funcionarios ejecutivos del estado reclamante al fugitivo que ha buscado asilo en su jurisdicción. Segundo, que la ley federal de extradición aplica a Puerto Rico, por lo que nuestros tribunales vienen obligados a velar por su cumplimiento.

**B. La Ley Uniforme de Extradición Criminal de Puerto Rico.**

El procedimiento de extradición en el Estado Libre Asociado está regulado por la Ley Uniforme de Extradición. Esta ley fue aprobada en el 1960 y calca sustancialmente las disposiciones del "Uniform Extradition Act" del 1936, promulgado por la Conferencia Nacional de Comisionados sobre Leyes Uniformes Estatales ("National Conference of Commissioners on Uniform State Laws"). *Sánchez v. Superintendente*, 104 D.P.R. 862, 864 n. 1 (1976). D. Nevárez Muñiz, *Sumario de Derecho Procesal Penal Puertorriqueño*, Instituto para el Desarrollo del Derecho Inc., San Juan, 2004, 7ma. ed., pág. 251.

La Ley Uniforme de Extradición procura hacer viable en Puerto Rico el mandato de la Cláusula de Extradición de la Constitución de los Estados Unidos.  La ley ordena que sus disposiciones sean interpretadas de manera consistente con lo provisto en otras jurisdicciones que hayan adoptado la ley uniforme, de suerte que se adelanten los propósitos que animan la ley y que persigue la Cláusula de Extradición. 34 L.P.R.A. sec. 1881bb.[8]

En muy pocas ocasiones hemos tenido oportunidad de expresarnos sobre la Ley Uniforme de Extradición.  *E.g., Sánchez v. Superintendente, ante; Galíndez v. Rodríguez Portier*, 102 D.P.R. 714 (1974).  El estatuto, en su primera sección, le impone al Gobernador "el deber de hacer que se arreste y se entregue a las autoridades ejecutivas de cualquier estado a toda otra persona que habiendo sido acusada de traición, delito grave u otro delito en dicho estado, hubiere huido de la justicia y se encontrare en el Estado Libre Asociado de Puerto Rico."  34 L.P.R.A. sec. 1881a.  A todas luces esta sección le exige al Gobernador el deber inexcusable y por ende de carácter ministerial, de rendir a las autoridades del estado reclamante el prófugo de la justicia que ha huido a Puerto Rico para burlar el procesamiento penal que enfrenta en dicha jurisdicción.

El procedimiento a seguir está minuciosamente detallado en la Ley Uniforme de Extradición Criminal.  El

---

[8] Esta sección dispone en lo pertinente: "Las disposiciones de este capítulo se interpretarán de manera que se efectúen sus propósitos generales de hacer uniforme la ley en los estados que la promulguen."  34 L.P.R.A. sec 1881bb.

mismo se inicia, como ya apuntamos, mediante la presentación de una demanda de extradición por el gobernador del estado reclamante al Gobernador de Puerto Rico. La demanda debe estar acompañada de la acusación presentada por el gran jurado o el fiscal o por una declaración jurada suscrita ante un magistrado del estado reclamante, conjuntamente con cualquier mandamiento de arresto emitido por dicho estado. La acusación o declaración jurada debe imputar a la persona reclamada la comisión de un delito bajo las leyes del estado reclamante. Dichos documentos deben estar autenticados por las autoridades correspondientes. 34 L.P.R.A. sec. 1881b.

Recibida la solicitud, el Gobernador puede requerir del Secretario de Justicia que investigue la misma y le rinda un informe.[9] 34 L.P.R.A. sec. 1881c. Ello lo efectúa el Departamento de Justicia a través de su División de Extradiciones. Una vez el Gobernador ha autorizado la extradición, se inicia el proceso judicial a través de la presentación de una demanda formal de extradición ante el Tribunal de Primera Instancia, en la que se solicita del tribunal que expida una orden de arresto contra el fugitivo. 34 L.P.R.A. sec. 1881, incisos f, g, h.

En *Sánchez v. Superintendente, ante*, pág. 867, citando amplia jurisprudencia federal y de los estados de los

---

[9] La investigación que ordene el Gobernador no podrá considerar los méritos de los cargos que pesen sobre el acusado. La Ley de Extradición Criminal específicamente indica en su Art. 20, 34 L.P.R.A. sec. 1881s, que "[l]a culpabilidad o la inocencia del acusado en cuanto al delito que se le imputa no puede ser investigada por el Gobernador. . . ."

Estados Unidos, reconocimos que una vez el Gobernador accede a la petición de extradición, se activa una presunción de que hay identidad entre el acusado y la persona requerida por el estado reclamante y que el procedimiento de extradición es legal y válido. Competerá entonces a la persona requerida rebatir tal presunción.

Bajo la Ley Uniforme de Extradición el detenido tiene derecho a atacar la legalidad del arresto y cuestionar el procedimiento mediante la presentación de un recurso de *habeas corpus*. 34 L.P.R.A. sec. 1881i. *Sánchez v. Superintendente, ante; Galíndez v. Rodríguez Portier, ante*. Al atender una petición de esta naturaleza, el tribunal del estado asilo sólo deberá examinar lo siguiente: Primero, si los documentos de extradición de su faz son correctos. Segundo, si la persona reclamada había sido acusada de un delito en el estado reclamante. Tercero, si el reclamado era la persona a que se refiere la solicitud de extradición. Y cuarto, si la persona cuya extradición se solicitaba podía ser considerada un fugitivo. *California v. Superior Court of California*, 482 U.S. 400 (1987); *Michigan v. Doran*, 439 U.S. 282 (1978); *Munsey v. Clough*, 196 U.S. 364 (1905).

Solamente si surgiera evidencia **más allá de duda razonable**, de que no se cumple con alguno de los criterios anteriormente mencionados, procedería declarar con lugar la petición de *habeas corpus* y dejar en libertad a la persona reclamada. *State of South Carolina v. Bailey*, 289 U.S. 412, 420 (1933)("Stated otherwise, he should not have been

released unless **it appeared beyond reasonable doubt** that he was without the state of South Carolina when the alleged offense was committed and, consequently, could not be a fugitive from her justice.")(Énfasis nuestro.)

Lo que no puede hacer el tribunal del estado asilo, en este caso Puerto Rico, es especular sobre el proceso que se ha de celebrar en el estado reclamante y basar su determinación en consideración al resultado final del proceso penal que enfrentaría la persona reclamada. Esta es la norma que priva en la jurisdicción norteamericana y la cual adoptamos como nuestra, ante el mandato legislativo que la Ley Uniforme de Extradición se interprete de manera consistente con las otras jurisdicciones en los Estados Unidos. 18 L.P.R.A. sec. 1881bb. En *State of South Carolina v. Bailey, ante,* se indicó: **"It was wholly beyond the province of the judge to speculate, as he seems to have done, concerning the probable outcome of any trial which might follow rendition to the demanding state."** (Énfasis nuestro.) Véase además, *Pacileo v. Walker*, 449 U.S. 86, 87 (1981); *Sweeney v. Woodall*, 344 U.S. 86 (1953). Adviértase que el procedimiento de extradición es sumario.

Resumimos, la Ley Uniforme de Extradición regula minuciosamente el procedimiento de extradición. Ésta claramente establece un precepto de carácter imperativo que requiere del Gobernador de Puerto Rico que proceda con la entrega del fugitivo si la solicitud que recibe se atiene a los requisitos exigidos en la ley y su jurisprudencia interpretativa.

La ley contiene, como apuntamos, su propio canon de hermenéutica que ordena que su interpretación sea cónsona con la interpretación de los tribunales federales o estatales que hayan examinado estatutos similares, incluyendo la ley federal de extradición. Véase 18 U.S.C. sec. 3182. De esta forma se procura la uniformidad en la aplicación de la ley penal por los distintos estados; y, además, se provee para la cohesión interna entre las distintas jurisdicciones que interrelacionan en los Estados Unidos. De ahí que miremos hacia la jurisprudencia estadounidense para transmitirle contenido a la Ley Uniforme de Extradición. Adviértase que, en última instancia, las leyes de los estados, territorios y del Estado Libre Asociado que regulan el proceso de extradición, lo que pretenden es viabilizar el mandato de la Cláusula de Extradición de la Constitución de los Estados Unidos.

Destacamos, pues, que la revisión judicial en estos casos es particularmente limitada ante la naturaleza sumaria del procedimiento y como secuela de los principios en que descansa la extradición y que deben guiar la interpretación de la ley.

Con este marco doctrinal de trasfondo, pasemos a evaluar los méritos de la controversia traída a nuestra atención.

**IV**

Como señalamos, el Tribunal de Apelaciones concluyó que toda vez que la Constitución del Estado Libre Asociado

de Puerto Rico prohíbe se imponga como castigo la pena de muerte, extraditar a Pennsylvania al señor Meléndez Cruz, donde podría enfrentar dicha pena conforme lo permite la legislación de ese estado, sería una violación de nuestra Constitución, y el Gobernador tiene un deber de velar por el cumplimiento de nuestras leyes. En cuyo caso, solamente se podrá extraditar a Martínez Cruz si Pennsylvania accede a no solicitar la pena de muerte. O dicho de otro modo, se objeta, verdaderamente, la ley penal de Pennsylvania por ésta autorizar en ciertas circunstancias, la imposición de la pena de muerte.

## A

La posición del Tribunal de Apelaciones es contraria al derecho estatutario puertorriqueño y al derecho federal. Su primer error es que se basa en una especulación y un hecho incierto sobre lo que pueda ocurrir en el estado reclamante una vez se lleve a cabo el proceso penal que pende contra Martínez Cruz. Como hemos podido apreciar, es improcedente especular sobre el posible resultado del proceso que habrá de enfrentar un prófugo en la jurisdicción que le reclama, para determinar si se le da curso o no a una petición de extradición. *State of South Carolina v. Bailey, ante.* Además, a la hora de evaluar una petición de *habeas corpus* en un proceso de extradición, es impropio fijar la decisión a tomar en términos de cuál es el estado de derecho vigente en la jurisdicción que hace el reclamo.

Al aplicar los requerimientos de la Ley Uniforme de Extradición debemos concluir que el estado de Pennsylvania cumplió a cabalidad con los mismos. De otra parte, Martínez Cruz no ha impugnado los documentos de extradición, tampoco ha argüido que no es un prófugo de la justicia, o que no pesan cargos criminales en su contra en Pennsylvania, o que él no es la persona buscada. Ante estos hechos, ahí debió concluir el análisis del foro primario así como el del tribunal apelativo, pues procedía como cuestión de derecho, denegar la petición de *habeas corpus* instada.

El recurrido no rebatió en forma alguna la presunción de legalidad y validez que quedó activada una vez el Gobernador de Puerto Rico accedió a la petición de extradición del primer ejecutivo de Pennsylvania. En su consecuencia procede darle curso a la extradición de Martínez Cruz.

Adviértase que la Ley Uniforme de Extradición le impone al gobernante una obligación ministerial de entregar a la persona requerida una vez se determina que la solicitud recibida cumple con los requisitos de ley. La ponderación de los tribunales inferiores de otros factores, exógenos a los mencionados previamente, se revela contraria al ordenamiento legal vigente.

Cabe destacar también, que a igual resultado llegamos si analizamos esta controversia desde el crisol de la ley de extradición federal. El Gobernador de Puerto Rico, después de todo, tiene el deber ineludible de cumplir con

la ley federal cuando ésta es de aplicación a unos hechos en particular, tales como los que se encuentran ante nuestra consideración.

Aquí resulta conveniente y necesario reseñar lo resuelto en *New Mexico v. Reed*, 524 U.S. 151 (1998), donde se configuró un conflicto entre la ley federal de extradición y una disposición de la Constitución de Nuevo México. En este caso Reed, convicto en Ohio, huyó a Nuevo México mientras se encontraba libre bajo palabra. Ohio solicitó la extradición y el gobernador de Nuevo México accedió a la misma. Reed entonces presentó un recurso de *habeas corpus* en una corte de distrito estatal de Nuevo México e impugnó su extradición a base de que no era un fugitivo, sino que huyó de Ohio bajo coacción ("duress"). Ello, en virtud de que se le iba a revocar su libertad bajo palabra en violación al debido proceso de ley y, además, que él temía por su vida si era encarcelado nuevamente en Ohio. El tribunal concedió el *habeas corpus*; determinación fue avalada por la Corte Suprema de Nuevo México.

Mediante una breve sentencia *Per Curiam*, el Tribunal Supremo revocó a la Corte Suprema de Nuevo México. Ésta se había valido del argumento de que Reed no era un "fugitivo" sino más bien un "refugiado de la justicia" ("refugee from justice") para conceder el *habeas corpus* solicitado. Al resolver, el Tribunal Supremo indicó:

> We accept, of course, the determination of the Supreme Court of New Mexico that respondent´s testimony was credible, but this is simply not the kind of issues that may be tried in the asylum State. **In case after case we have held**

**that claims relating to what actually happened in the demanding State, the law of the demanding State , and what may be expected to happen in the demanding State when the fugitive returns, are issues that must be tried in the courts of that State, and not in those of the asylum State.** (Énfasis nuestro.)

*Reed*, *ante*, 153.

La Corte de Nuevo México había fundamentado su determinación de no extraditar a Reed en una disposición de su Constitución ("the right of seeking and obtaining safety"), que a su juicio impedía que Reed fuera entregado a las autoridades de Ohio toda vez que la misma privaba sobre la Cláusula de Extradición.  Al descartar este fundamento, el Tribunal Supremo indicó, citamos *in extenso*;

> The Supreme Court of New Mexico also held that the New Mexico Constitution´s provision guaranteeing the right 'of seeking and obtaining safety' prevailed over the State´s duty under Article IV of the United States Constitution. But long ago . . . we held that the duty imposed by the Extradition Clause of the asylum State was mandatory.  In *Puerto Rico v. Branstad*, 483 U.S. 219, 227 (1987), we reaffirmed 'the conclusion that the commands of the Extradition Clause are mandatory, and afford no discretion to the executive officers or the courts of the asylum State. . . And in *California v. Superior Court of Cal, San Bernardino Cty*, 482 U.S. 400, 405-406 (1987), we said: 'The Federal Constitution places certain limits on the sovereign powers of the States, limits that are an essential part of the Framers´ conception of national identity and Union." (Cita omitida.)

524 U.S. págs. 154-155.

De la misma forma que Nuevo México no podía invocar la cláusula de su Constitución como detente para la aplicación de la Cláusula de Extradición de la Constitución de los Estados Unidos y de la ley federal de extradición, para negarse a la extradición de Reed, mal puede Puerto Rico

invocar la suya para impedir la extradición de Martínez Cruz o para condicionar la misma.

**B**

De ordinario y en estricto rigor, nuestro análisis concluiría aquí. Antes bien, la insistencia de buscar apoyo en la cláusula prohibitiva de la pena capital de nuestra Constitución y matizar toda la discusión en redor de la misma, exige los siguientes comentarios.

**1**

Antes de examinar la disposición constitucional invocada, debe tenerse en su justa perspectiva la tarea interpretativa que enfrentamos. Este no es un caso de derecho internacional. El Tribunal de Apelaciones, así como los amigos de la corte, destinan gran parte de sus respectivas argumentaciones a discutir la pena de muerte desde la perspectiva del derecho internacional. Sobre esa base arguyen que es improcedente acceder a la petición de Pennsylvania. Lo cierto es, sin embargo, que la controversia ante nuestra consideración no plantea problema alguno de derecho internacional. Como correctamente señaló el Procurador General: "[a]quí de lo que se trata es de un problema doméstico (o municipal, para usar la terminología de derecho internacional), entre partes de los Estados Unidos; esto es, entre Pennsylvania y Puerto Rico."

El Estado Libre Asociado coexiste con otras jurisdicciones estatales y territoriales en una comunidad jurídica. En el campo de la extradición, estos vínculos suscitan varios problemas prácticos, los cuales

discutiremos más adelante, toda vez que existe un tránsito relativamente inhibido de personas. No podemos obviar estos problemas al examinar nuestra cláusula prohibitiva de la pena capital. Además, la controversia de marras nos obliga a sopesar el respeto que merecen las normas jurídicas y las expectativas razonables de los estados y territorios estadounidenses.

El Estado Libre Asociado se ha valido del mismo proceso de extradición que ahora impugna uno de sus ciudadanos. Si el Gobernador de Iowa venía obligado a respetar nuestro ordenamiento jurídico y entregar a Ronald Calder, mal podríamos examinar nuestra Constitución sin mostrar un respeto análogo al ordenamiento de Pennsylvania, y a la confianza que dicho estado ha tenido en la vigencia del derecho federal de extradición con posterioridad a la decisión de *Puerto Rico v. Branstad*, *ante*.

**2**

Enmarcada así nuestra tarea interpretativa, pasamos a examinar el argumento esgrimido de que la Ley Uniforme de Extradición Criminal, según aplicada a los hechos en este caso, está reñida con la prohibición de la pena capital contenida en la Constitución del Estado Libre Asociado.

No hay duda que la Carta de Derechos de la Constitución del Estado Libre Asociado es un documento de avanzada que representa los valores más estimables del Pueblo de Puerto Rico. Así, la Sección 7 de la Carta de Derechos, con su proscripción de la pena de muerte, es una disposición de profundo contenido moral que representa el

respeto a la vida que profesa nuestra ciudadanía, compartido éste por la inmensa mayoría de la comunidad internacional occidental.

Sin embargo, cabe observar que el Artículo II, Sec. 7, cláusula 2 de nuestra Constitución no atiende expresamente al problema de la extradición. Dicha cláusula no tiene, como no puede tener, efecto extraterritorial. Después de todo, "[l]a autoridad política del Estado Libre Asociado de Puerto Rico se extenderá a la Isla de Puerto Rico y a las islas adyacentes dentro de su jurisdicción." Constitución del Estado Libre Asociado, Art. I, Sec. 3. Su texto sólo prohíbe la imposición de la pena de muerte en el Derecho penal de Puerto Rico; es decir, sólo en nuestro ordenamiento jurídico penal, sin mas.[10]

Por otro lado, exigir del estado de Pennsylvania, como ha hecho el tribunal apelativo, y a lo que nos invitan tanto el recurrido como los amigos de la corte, a que se comprometa de antemano a no aplicar su derecho penal en función de nuestra Constitución, es una intromisión indebida con los procesos judiciales de ese estado. Ayer, el Gobernador de Iowa nos exigía que procesaramos al señor Calder por un cargo más razonable ("a more realistic charge"); hoy, nosotros exigiríamos a Pennsylvania que

---

[10] Estas expresiones no deben entenderse en el sentido de que acogemos una interpretación estrecha de la cláusula examinada. Ahora bien, la claridad del texto constitucional es uno de los factores a considerarse cuando nos enfrentamos al inusual imperativo de armonizar el contenido de nuestro ordenamiento con el de las jurisdicciones estatales y territoriales de la comunidad jurídica a la cual pertenecemos.

imponga una pena más razonable. Ambas condiciones constituyen, claramente, una interferencia con la soberanía de cada jurisdicción para administrar su sistema de justicia penal.

Difícilmente podemos avalar tal resultado. De la misma forma que exigimos de otras jurisdicciones estatales respeto para los procesos penales del Estado Libre Asociado, así también existe la obligación legal y moral de hacer lo propio con los procesos penales de dichas jurisdicciones.

También inciden poderosamente en nuestra interpretación los efectos prácticos de la posición que adelantan los amigos de la corte y el recurrido, y de la cual se hizo eco el foro apelativo intermedio. El curso de acción propuesto por el foro *a quo,* convertirá a Puerto Rico en el paraíso de los más serios delincuentes de otros estados; quienes, ante la posibilidad de enfrentar en su estado la pena de muerte, comenzarán su peregrinaje hacia nuestras playas en búsqueda de su santuario. Aquí les habremos inmunizado contra el procesamiento penal.

Hay que destacar otra dificultad práctica con la posición del foro apelativo, del peticionario y de los amigos de la corte. Al negarse el Estado Libre Asociado a extraditar a un fugitivo, procederá que éste sea dejado en libertad pues no hay autoridad legal alguna para que una persona que no ha sido acusada de delito permanezca encarcelada. Como resultado de la anterior, unos delitos

quedarán impunes y unas víctimas no obtendrán cumplida justicia. Este resultado es insostenible.

**3**

En fin, un justo balance de las consideraciones expuestas nos impide concluir que la Ley Uniforme de Extradición Criminal está en conflicto con el Artículo II, Sec. 7, cláusula 2 de la Constitución del Estado Libre Asociado.

**V**

Por los fundamentos que anteceden, procede revocar la decisión del Tribunal de Apelaciones y ordenar la desestimación y archivo de la petición de *habeas corpus* presentada por el recurrido.

Se dictará sentencia de conformidad.

Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.

Juan Martínez Cruz

    Recurrido

AC-2005-070

SENTENCIA

San Juan, Puerto Rico, a 5 de mayo de 2006

Por los fundamentos antes expuestos en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, revocamos la decisión del Tribunal de Apelaciones y ordenamos la desestimación y archivo de la petición de *Habeas Corpus* presentada por el recurrido.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez concurre en el resultado sin opinión escrita. La Jueza Asociada señora Fiol Matta disiente sin opinión escrita. El Juez Asociado señor Fuster Berlingeri no intervino

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo