EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Juan Martínez Cruz<br><br>Recurrido | Apelación<br><br>2006 TSPR 110<br><br>168 DPR ____ |

Número del Caso: AC-2005-70

Fecha: 30 de junio de 2006

Tribunal de Apelaciones:

        Región Judicial de San Juan

Jueza Ponente:

        Hon. Emmalind García García

Oficina del Procurador General:

        Lcdo. Salvador J. Antonetti Stutts
        Procurador General

Abogada de la Parte Recurrida:

        Lcda. Eileen N. Díaz Ortiz

Colegio de Abogados de Puerto Rico:

        Lcdo. Edgardo M. Román Espada

        Lcdo. Julio Fontanet Maldonado
        Presidente del Colegio de Abogados

Unión Americana de Libertades Civiles:

        Lcdo. William Ramírez Hernández

Materia: Extradición

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Apelante

       v.

 Juan A. Martínez Cruz          AC-2005-70          Apelación

    Apelado


RESOLUCIÓN


En San Juan, Puerto Rico, a 30 de junio de 2006.

A la Moción de Reconsideración presentada por el apelado, Juan A. Martínez Cruz, no ha lugar.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta reconsideraría y emite Opinión Disidente. El Juez Asociado señor Fuster Berlingeri no intervino.


                    Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

      Apelante

       v.

Juan A. Martínez Cruz            AC-2005-70    Apelación

      Apelado


Opinión disidente emitida por la Jueza Asociada SEÑORA FIOL MATTA


En San Juan, Puerto Rico, a 30 de junio de 2006.

Por entender, desde un principio, que la decisión de este Tribunal en el presente caso fue desacertada, reconsideraría y paso a exponer las razones que me llevaron a disentir de la opinión que emitiera la Mayoría de este Tribunal el pasado 5 de mayo.

Los jueces no sólo tenemos el deber de hacer justicia sino también de evitar que se cometan actos que según nuestra conciencia sean injustos y contrarios a la visión de equidad, legalidad, y moral social que persigue nuestro ordenamiento jurídico. El caso ante nosotros es una de esas instancias en la cual debemos actuar aferrados a nuestra conciencia y defender uno de los pilares de nuestro sistema político-jurídico y de nuestra idiosincrasia, el respeto supremo a la vida. No

podemos ignorar nuestro deber de ser portaestandarte de los valores que recoge nuestra Constitución. Mucho menos, podemos huir de esta obligación circundando las controversias que se nos presentan por temor a ser revocados o por salvaguardar el "comity" entre los estados o por evitar que el gobierno de Puerto Rico luzca como que actúa en contra de sus acciones previas.

El resultado de una controversia de derecho depende en primera instancia de la forma en que el jurista se formule el problema que desea resolver. Es por esta razón, que ante una misma situación de hechos se puede llegar a diversos resultados, en teoría, todos igualmente lógicos, atinados y válidos jurídicamente. Sin embargo, lo cierto es que el único resultado acertado es aquél que atiende el verdadero problema que se plantea.

La Opinión mayoritaria cuya reconsideración solicita el peticionario se equivoca, a mi entender, al plantearse el problema en este caso. Según la Mayoría, la controversia a resolver es si la Ley uniforme de extradición criminal, Ley núm. 4 de 24 de mayo de 1960, 34 L.P.R.A. §§ 1881–1881bb (2004), le impone al Gobernador de Puerto Rico el deber ministerial de acceder a una solicitud de extradición hecha por el gobernador de uno de los estados de los Estados Unidos, si la petición cumple con los requisitos de la ley. Considero, ante el trámite de este caso y los hechos que se reseñan muy bien en la Opinión Mayoritaria, que son otras las controversias que se nos presentan. Primero, ¿puede la rama judicial en un procedimiento de extradición ordenar al Ejecutivo a condicionar la extradición? Segundo, de contestarse en la afirmativa la primera pregunta, ¿sería

contraria a derecho la condición de que no se exponga a la pena de muerte al peticionario, una vez éste sea extraditado, por razón de que nuestra Constitución prohíbe la pena de muerte e instituye como deber del Estado la protección de la vida?

La primera de las controversias tiene una contestación muy sencilla. En efecto, los tribunales pueden ordenar al Ejecutivo a realizar un acto siempre que haya una obligación de hacerlo, el acto no sea contrario a derecho, y no infrinja el principio de la separación de poderes. Así pues, los tribunales pueden ordenar que se condicione la extradición de un individuo a un estado de los Estados Unidos, siempre y cuando esto no constituya ningún acto contrario a las leyes puertorriqueñas y a las leyes federales, más cuando éstos, según la ley de extradición, son parte activa del procedimiento. *Véase* 34 L.P.R.A. §§ 1881–1881bb (2004).

En su opinión, la Mayoría no aborda este asunto sino que atiende directamente la segunda de las controversias. Intenta hacerlo, no evaluando la legalidad de la condición, sino evaluando si el Gobernador de Puerto Rico tiene facultad para imponer una condición al Ejecutivo de un estado de los Estados Unidos, en un proceso de extradición. Concluye que el Gobernador de Puerto Rico no tiene esta facultad. Utiliza como fundamento la línea jurisprudencial del Tribunal Supremo de los Estados Unidos en cuanto a los casos de extradición bajo la cláusula de extradición de la Constitución federal, aunque reconoce que aún no sabemos si la cláusula de extradición de la Constitución de los Estados Unidos nos aplica.

La Opinión mayoritaria cuya reconsideración se deniega expone que un estado no puede negarse a extraditar ni puede condicionar la extradición, aun cuando ese estado entienda que tiene la obligación de hacerlo para así actuar cónsono a las protecciones que otorga su constitución. Para sostener esta posición utiliza el caso de New Mexico v. Reed, 524 U.S. 151 (1998), que se fundamenta en la cláusula de extradición de la Constitución de Estados Unidos, cláusula que al día de hoy desconocemos si nos aplica. Por otro lado, la Opinión señala que "en última instancia, las leyes de los estados, territorios y del Estado Libre Asociado que regulan el proceso de extradición, lo que pretenden es viabilizar el mandato de la Cláusula de Extradición de la Constitución de los Estados Unidos." Nos preguntamos cómo nuestra ley de extradición puede viabilizar algo sobre cuya aplicación no tenemos certeza. Lo cierto es que la Opinión de la mayoría no cita ninguna fuente para sostener esta premisa. En el otro instante que la Mayoría hace esa afirmación la basa en nuestra Ley Uniforme de Extradición.[1] Sin embargo, ésta sólo establece que sus disposiciones deben interpretarse de manera que se cumpla con el propósito de lograr que la ley sea uniforme en los estados que la promulguen. En ninguna instancia la ley menciona la

_____

[1] La opinión de la Mayoría señala que:

> "La ley ordena que sus disposiciones sean interpretadas de manera consistente con lo provisto en otras jurisdicciones que hayan adoptado la ley uniforme, de suerte que se adelanten los propósitos que animan la ley y que persigue la Cláusula de Extradición. 34 L.P.R.A. sec. 1881bb."

cláusula de extradición de la Constitución de los Estados Unidos. *Véase* 34 L.P.R.A. § 1881bb (2004).

Por último, la Mayoría utiliza el caso de <u>Puerto Rico v. Brandstad</u>, 483 U.S. 219 (1987), para sustentar que el gobierno de Puerto Rico no puede condicionar una extradición al gobierno de ninguno de los estados. Indica que:

> [d]e *Branstad* debemos colegir, en lo que respecta a la controversia ante nuestra consideración, primero, que el gobernante del estado asilo no tiene discreción --cumplidos los requisitos procesales de la petición de extradición-- para rendir ante los funcionarios ejecutivos del estado reclamante al fugitivo que ha buscado asilo en su jurisdicción. Segundo, que la ley federal de extradición aplica a Puerto Rico, por lo que nuestros tribunales vienen obligados a velar por su cumplimiento.

La primera conclusión a la que arriba la Mayoría no se colige del caso de Brandstad, ya que la opinión del Tribunal Supremo de los Estados Unidos es clara en señalar que la ausencia de discreción del gobernante del estado asilo y los tribunales de este estado para negar la extradición **surge de la cláusula de extradición**. <u>Puerto Rico v. Brandstad</u>, *supra*, en la pág. 226. En cuanto a la segunda conclusión, *Brandstad* deja diáfano que la ley de extradición federal es la que aplica a Puerto Rico y que bajo ésta ley es que Puerto Rico puede hacer sus reclamos de extradición a los estados.[2]

---

[2] No es ésta la primera vez que el Tribunal Supremo de los Estados Unidos evita resolver si determinada disposición de la constitución de los Estados Unidos aplica a Puerto Rico. Ello es característico de la relación político-

constitucional entre Puerto Rico y Estados Unidos. *Véase*, *por ejemplo*, <u>Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero</u>, 426 U.S. 572(1975); <u>Torres v. Com. of</u>

Con este panorama, me parece prematuro concluir que Puerto Rico no puede condicionar su extradición bajo la ley federal o bajo la ley estatal. En primer lugar, porque no tenemos jurisprudencia bajo la ley federal que en concreto lo prohíba, ya que el Tribunal Supremo de Estados Unidos siempre hace referencia a la cláusula de extradición para prohibir este tipo de condiciones. Tampoco sabemos las implicaciones que nuestra relación con Estados Unidos pueda tener sobre la aplicación local de esta legislación federal. Por otra parte, luego de atender el asunto sobre la irrenunciabilidad de las facultades penales del Estado Libre Asociado, nuestra ley de extradición dispone en forma general que los procedimientos a su amparo no deben interpretarse como una renuncia de Puerto Rico a sus derechos, privilegios o jurisdicción de forma o manera alguna.[3]

---

Puerto Rico, 442 U.S. 465 (1979); Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 442 U.S. 465 (1979); David M. Helfeld, *How Much of the United States Constitution and Statutes Are Applicable to the Commonwealth of Puerto Rico?*, 110 F.R.D. 449(1986). Lo anterior no debe ser impedimento para que este Tribunal, ante la ausencia de un pronunciamiento claro sobre la aplicabilidad de la cláusula de extradición a Puerto Rico y frente a los valores fundamentales a la vida plasmados en nuestra Constitución que reclama el peticionario, sea particularmente restrictivo al momento de interpretar tal proceder del Tribunal Supremo de los Estados Unidos.

[3] *Véase* 34 L.P.R.A. § 1881z (2004). Esta sección de la Ley uniforme de extradición establece que:

> Nada en este capítulo se interpretará como una renuncia por el Estado Libre Asociado de Puerto Rico de su derecho, poder o privilegio para juzgar a dicha persona solicitada por un delito cometido

> en Puerto Rico, o de su derecho, poder o privilegio para recuperar la custodia de dicha persona mediante procedimiento de extradición, o

Entiendo que si se considera esta incertidumbre en cuanto a la capacidad del Estado Libre Asociado de poder condicionar una extradición a un estado de los Estados Unidos y la valorización que ha hecho nuestro pueblo sobre la dignidad de las personas y el derecho a su vida, recogida en la prohibición a la pena de muerte en nuestra Constitución, no podemos derivar otra conclusión que no sea la necesidad de reconsiderar la decisión en este caso y confirmar la acción del Tribunal de Apelaciones. A tal grado es el compromiso de nuestro pueblo con la preservación de la vida que nuestros constituyentes se aseguraron, en sus discusiones sobre la prohibición de la pena de muerte, que no se pudiera en algún momento interpretar que bajo alguna circunstancia o por algún tecnicismo se podía privar de la vida a cualquier ser humano. 2 Diario de Sesiones de la Convención Constituyente de Puerto Rico 1503-23 (2003).

Por otro lado, me parece poco acertada la reproducción del argumento *ad terrorem* de que un estado que condicione la extradición a que no se ejecute al acusado se convertirá en "un santuario para los criminales" o en "el paraíso de los más serios delincuentes". Este argumento se utilizó para la creación de la cláusula de extradición, pero hoy día carece de vigencia y de apoyo fáctico. Esto se hace más patente hoy cuando muchos países han prohibido la pena de muerte, y cuando los países vecinos de los Estados Unidos no extraditan a menos que se les acredite que no se someterá

de otra forma para someterla a juicio, dictarle sentencia o castigarla por cualquier delito aquí cometido, como tampoco ningún procedimiento bajo este capítulo que resultare en, o dejare de resultar en una extradición, se interpretará como una renuncia por el Estado Libre Asociado de Puerto Rico a sus derechos, privilegios o jurisdicción en forma o manera alguna.

al acusado a la pena de muerte. Véase <u>U.S. v. Burns</u>, 2001 SCC 7; Canada-U.S. Extradition Treaty, 27 UST 983. Más aún, en <u>Soering v. United Kingdom</u>, 14038/88 [1989] ECHR 14, el Tribunal Europeo de Derechos Humanos sostuvo que violaría el artículo 3 de la Convención Europea de Derechos Humanos extraditar a una persona a los Estados Unidos desde Inglaterra en un caso que acaree la pena de muerte. No obstante, ninguno de estos países, contrario a la tesis de la Mayoría, se ha convertido en "un santuario para los criminales".

Por último, me siento en la obligación de señalar que no entiendo por qué el gobierno de Puerto Rico acude en primer lugar ante este Tribunal para cuestionar el que se condicione la extradición, sin esperar a que el estado de Pennsylvania levante el asunto una vez esto ocurra. En ese caso, de Pennsylvania no estar de acuerdo con esa condición o de entender que eso infringe algún principio del federalismo que cobije a Puerto Rico o que es una afrenta a su soberanía, entonces puede ese estado cuestionar la condición que intenta proteger la vida de una persona. No comprendo por qué el gobierno del Estado Libre Asociado de Puerto Rico defiende con tanto fervor las prerrogativas de otro gobierno y no las valoraciones morales de nuestro pueblo.

Por todas las razones que anteceden, reconsideraría la decisión de este Tribunal en el presente caso.


Liana Fiol Matta
Jueza Asociada